OPINION
{¶ 1} Defendant-appellant, Sammy C. Wilson, appeals from his convictions in the Warren County Court of Common Pleas for one count of illegal assembly or possession of chemicals for the manufacture of drugs and one count of aggravated possession of drugs. For the reasons outlined below, we affirm appellant's convictions but reverse as to sentencing and remand this case for resentencing.
 {¶ 2} On the morning of September 3, 2005, appellant purchased two packages of generic Sudafed from the pharmacy of the Bigg's store in Deerfield Township. Appellant paid *Page 2 
in cash and purchased no other items at the store. The pharmacist on duty found appellant's purchase to be suspicious and common among individuals purchasing pseudoephedrine for the purpose of manufacturing methamphetamine.[1] The pharmacist contacted the store's security guard, who then observed appellant and a friend, Joe Grooms, get into a car with Tennessee license plates and leave the parking lot. The security guard then contacted the Warren County Sheriff's Office to report the activity, giving deputies a full description of both appellant and his vehicle, including the Tennessee plate number.
 {¶ 3} Being familiar with the purchasing habits of individuals engaged in the manufacture of methamphetamine, deputies began searching parking lots of nearby stores. Deputies soon located the described vehicle with the identified Tennessee license plate number parked in a Kroger parking lot, approximately one mile from the Bigg's store. Deputies then called the Kroger pharmacy to alert them of their investigation and were informed that a man fitting appellant's description was one of two men currently purchasing two boxes of generic Sudafed and nothing else.
 {¶ 4} Appellant and Grooms soon returned to the vehicle with a Kroger bag. Once appellant and Grooms got into the vehicle, deputies on the scene approached with their weapons drawn. Once the officers could see the hands of both men, Deputy Brian Payne lowered his weapon, approached appellant's side of the car, and asked the two men to exit the vehicle. Deputy Payne then performed a protective pat-down search of appellant, at which point he felt hard, cylindrical objects in both of appellant's front pockets. Deputy Payne requested permission to remove the objects and then retrieved a flashlight, lighters, and a glass vial containing 1.9 grams of methamphetamine.
 {¶ 5} Deputy Payne then placed appellant in his police cruiser and read him his *Page 3 
Miranda rights. At that point, appellant admitted that the vial contained methamphetamine. Appellant also stated that he and Grooms were in Ohio purchasing pseudoephedrine products with the intent to return to Tennessee and sell them to someone who would use them in the manufacture of methamphetamine.
 {¶ 6} Both appellant and Grooms were placed in police cruisers and a search was performed on their vehicle. In that search, deputies recovered four knives, ammunition for a .22 caliber gun and multiple packages of generic Sudafed. Some of the generic Sudafed pills had been removed from their blister packs and were found loose on the floorboards. In the center console of the vehicle, deputies also recovered a pill bottle containing multiple pseudoephedrine pills. Grooms was also in possession of a note that read "30 milligrams of nasal decongestant." Both appellant and Grooms were then informed of their arrest. On October 3, 2005, appellant was indicted on one charge of aggravated possession of drugs in violation of R.C. 2925.11(A) and one charge of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), or in the alternative, complicity in the violation of that same section.
 {¶ 7} On November 7, 2005, appellant moved to suppress the evidence obtained during the search and seizure in the Kroger parking lot. Appellant argued that the deputies "had no probable cause to detain or stop" him. At the hearing on appellant's motion, the state presented the testimony of Deputy Payne. Deputy Payne testified that he was on duty when the report of suspicious Sudafed purchases was received and testified to the actions taken by deputies in investigating the suspicious activity.
 {¶ 8} After the hearing, the trial court denied appellant's motion. The case proceeded to a jury trial, held December 12 and 13, 2005. The jury found appellant guilty of aggravated possession of drugs and guilty of illegal assembly of chemicals for the manufacture of drugs, finding him not guilty of the alternative charge of complicity to illegal assembly of chemicals. *Page 4 
Following a presentence investigation, the trial court proceeded to sentence appellant on January 23, 2006. The court sentenced appellant to three years in prison for the charge of illegal assembly or possession of chemicals for the manufacture of drugs and eleven months in prison for the charge of aggravated possession of drugs, ordering the sentences to run concurrently.
 {¶ 9} Appellant then filed this timely appeal, citing five assignments of error for our review. For purposes of discussion, we will address appellant's assignments of error out of order.
 {¶ 10} Assignment of Error No. 1
 {¶ 11} "THE TRIAL COURT ERRED BY DENYING APPELANTS [sic] MOTION TO SUPPRESS WHEN THE SEARCH WAS IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 14, SECTION 1 OF THE OHIO CONSTITUTION."
 {¶ 12} Appellant contends that the trial court erred in denying his motion to suppress the evidence obtained during his encounter with deputies in the Kroger parking lot. Appellant argues that the deputies did not have sufficient facts to establish a particularized suspicion which would justify their stop of his vehicle. He further argues that the deputies detained him unreasonably, with weapons drawn. Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. LeClair, Clinton App. No. CA2005-11-027,2006-Ohio-4958, ¶ 6, citing State v. Long (1998), 127 Ohio App.3d 328,332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. Id., citingState v. Curry (1994), 95 Ohio App.3d 93, 96. As such, a reviewing court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. Id., citing State v. Guysinger (1993),86 Ohio App.3d 592, 594. However, an appellate court *Page 5 
independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard. Id.
 {¶ 13} In this case, appellant argues that the deputies lacked sufficient articulable suspicion to stop and detain him outside the Kroger store, and that all of the evidence obtained from that point was the product of an illegal and unreasonable detention.
 {¶ 14} Both the Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution guarantee the right of people to be secure from unreasonable searches and seizures. However, it is well-recognized that officers may briefly stop and detain an individual, without an arrest warrant and without probable cause, in order to investigate a reasonable and articulable suspicion of criminal activity. See Terry v. Ohio (1967), 392 U.S. 1, 19-21, 188 S.Ct. 1868;State v. Bobo (1988), 37 Ohio St.3d 177. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances" as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." LeClaire at ¶ 9, quoting State v. Freeman
(1980), 64 Ohio St.2d 291, syllabus, and Bobo at 179.
 {¶ 15} Based on our review of the evidence, we find that the deputies' stop and detention of appellant was justified by sufficient reasonable and articulable suspicion. Deputies received a report of suspicious activity from the Bigg's store pharmacist, specifically that one of two gentlemen, driving an out-of-state vehicle, had just paid cash for two packages of generic Sudafed and purchased nothing else. In an effort to further investigate the pharmacist's suspicion, deputies attempted to locate the described vehicle. They quickly did so, finding the vehicle with the exact license plate number parked one mile away in a Kroger parking lot. Deputies then notified the Kroger pharmacy of their suspicions, and were informed that a man fitting appellant's description was one of two men currently purchasing *Page 6 
generic Sudafed and nothing else. Deputies soon observed a man, fitting the description given by both pharmacists and carrying a Kroger bag, re-enter the vehicle with the Tennessee plates.
 {¶ 16} At the hearing on appellant's motion, Deputy Payne testified that he was familiar with the practice of individuals purchasing over-the-counter cold medicines containing pseudoephedrine in order to use the pseudoephedrine in the manufacture of methamphetamine. He further testified that it is common for these individuals to go to multiple locations, making multiple small purchases of pseudoephedrine, in order to avoid suspicion.
 {¶ 17} Based on these facts and the training and experience of the deputies on the scene, there was sufficient reasonable and articulable suspicion to justify the officers investigative stop of appellant's vehicle. While appellant argues that more evidence was needed to justify the deputies' investigation, the standard for an investigative stop is not probable cause, but reasonable, articulable suspicion. The deputies clearly had more than a mere hunch in this case and were operating under sufficient reasonable suspicion that appellant was engaged in the criminal act of assembling chemicals for the manufacture of methamphetamine. Under these facts the officers were justified in stopping and detaining appellant in order to investigate.
 {¶ 18} Further, appellant's argument that the deputies acted unreasonably in drawing their weapons and ordering him out of the vehicle when they stopped and detained him is unfounded. Courts throughout the country have recognized that "the nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous." State v. Evans, 67 Ohio St.3d 405,413, 1993-Ohio-186, quoting United States v. Ceballos (E.D.N.Y. 1989),719 F.Supp 119, 126. Additionally, an order to step out of a stopped vehicle "is not a stop separate and distinct from the original traffic stop." Id. at *Page 7 
 {¶ 19} Under the circumstances of this case, the deputies acted reasonably in drawing their firearms and ensuring their safety during the investigative stop. Appellant and Grooms were suspected of assembling chemicals for the manufacture of methamphetamines. As stated above, individuals in the drug trafficking industry may reasonably be assumed to be armed and dangerous. Therefore, the officers reasonably ensured their safety by drawing their firearms on the vehicle and having appellant and Grooms raise their hands. Once Deputy Payne approached the vehicle and observed that the men had nothing in their hands, he reholstered his weapon and asked appellant and Grooms to exit the vehicle to further ensure the safety of officers on the scene. These actions were not, as suggested by appellant, unreasonable.
 {¶ 20} The deputies then proceeded to do a protective pat-down search which produced further evidence, establishing probable cause and justifying the remainder of appellant's encounter with deputies, which he does not challenge here. Therefore, we find that the trial court properly denied appellant's motion to suppress the evidence obtained during this encounter and appellant's first assignment of error is overruled.
 {¶ 21} Assignment of Error No. 4:
 {¶ 22} "THE TRIAL COURT ERRED BY ALLOWING APPELLEES [sic] WITNESS TO GIVE A LEGAL CONCLUSION."
 {¶ 23} Appellant argues in his fourth assignment of error that the trial court erroneously permitted the state's expert witness to testify as to a legal conclusion at his trial. Appellant asserts that the testimony was outside of the witness' specialized knowledge and may not be considered harmless error.
 {¶ 24} Appellant refers to the testimony of the state's expert witness, Brooke Ehlers. Ehlers was qualified as an expert in the field of forensic chemistry and in the manufacture of *Page 8 
methamphetamine. On both direct and cross-examination, Ehlers testified that pseudoephedrine, the substance found in Sudafed and necessary to the manufacture of methamphetamine, was a drug rather than a chemical. She was unable, however, on cross-exam, to clearly identify a distinction between the two. On redirect, Ehlers was asked, based on her familiarity with the statute prohibiting the possession of chemicals used to manufacture methamphetamine, whether pseudoephedrine would fall under that law. Appellant's trial counsel objected, arguing that Ehlers was not an expert in the law. The court overruled the objection and Ehlers responded that "from [her] understanding of the law, the pseudoephedrine would be considered one of those substances that falls under the law."
 {¶ 25} Appellant argues that this testimony amounts to an impermissible legal conclusion. He further argues that this court may not find harmless error with regard to this testimony because it materially affected the outcome of the trial. In response, the state argues that even if Ehlers did testify beyond her expertise, the error was harmless because the trial court properly identified the "chemical" as pseudoephedrine in the jury instructions.
 {¶ 26} We agree with the state. Regardless of Ehlers testimony, it was the court that determined that pseudoephedrine would satisfy the "chemical" element of the statute. It is a basic proposition of law that the responsibility for instructing the jury on matters of law falls upon the court, not upon a witness. State v. Singleton (Mar. 24, 1982), Clermont App. No. 1086 (finding that trial court properly determined as a matter of law that instrument negotiated by defendant was a check for purposes of statute, where "check" was not defined). The trial court, and not Ehlers, made the legal conclusion that pseudoephedrine was a chemical for purposes of the statute. This was evidenced by the court's decision on appellant's Crim. R. 29 motion for an acquittal, wherein appellant argued that there was insufficient evidence to conclude that pseudoephedrine was a chemical. The court explained that Ehlers was drawing a distinction that was not necessary for purposes of the statute, and *Page 9 
recognized that "they're both chemicals." The court also, in its instructions to the jury, identified the "chemical" possessed as pseudoephedrine.
 {¶ 27} While the Ohio Revised Code does not provide a definition of the term "chemical," we find persuasive guidance from the United States Code. In the list of definitions in their own chapter on drug offenses, the code identifies pseudoephedrine as a "list 1 chemical." Section 802(34)(K), Title 21, U.S. Code. We find that, regardless of Ehlers testimony regarding the status of pseudoephedrine in relation to the illegal assembly statute, the trial court properly identified pseudoephedrine as the chemical at issue for purposes of the statute. Therefore, any error in Ehlers testimony was harmless. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 28} Assignment of Error No. 2:
 {¶ 29} "THE TRIAL COURT ERRED IN THAT APPELLANT'S CONVICTION FOR ILLEGAL ASSEMBLY OF CHEMICALS FOR THE MANUFACTURING OF DRUGS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 30} Assignment of Error No. 3:
 {¶ 31} "THE TRIAL COURT ERRED IN ORDERING ENTRY OF JUDGMENT OF CONVICTION FOR COUNT ONE ILLEGAL ASSEMBLY OF [sic] POSSESSION OF CHEMICALS FOR THE MANUFACTURING OF DRUGS WHEN THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."
 {¶ 32} In his second and third assignments of error, appellant challenges the sufficiency and weight of the evidence underlying his conviction for illegal assembly or possession of chemicals for the manufacture of drugs. Because these two assignments of error may be resolved together, we will address these issues jointly. Appellant argues that the state failed to provide sufficient evidence to support his conviction by failing to establish that he possessed a chemical or that he had any intent to manufacture methamphetamine. *Page 10 Warren CA2006-01-007 He further argues that the weight of the evidence underlying these elements demonstrates that the jury lost its way, creating a manifest miscarriage of justice in finding him guilty.
 {¶ 33} In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Lucas, Tuscarawas App. No 2005AP090063,2006-Ohio-1675, ¶ 8; State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 14.
 {¶ 34} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. State v. Lombardi, Summit App. No 22435,2005-Ohio-4942. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal. Thompkins, 1997-Ohio-52.
 {¶ 35} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the *Page 11 Warren CA2006-01-007 evidence will also be dispositive of the issue of sufficiency." Lombardi at ¶ 9, quoting State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462. Because our resolution of appellant's claim that his conviction was against the weight of the evidence is dispositive in this case, we will address that argument first.
 {¶ 36} Appellant challenges only the evidence supporting his conviction for illegal assembly or possession of chemicals for the manufacture of drugs. R.C. 2925.041(A) provides:
 {¶ 37} "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with intent to manufacture a controlled substance a controlled substance in schedule I or II.
 {¶ 38} "(B) In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section."
 {¶ 39} Appellant contends that the weight of the evidence fails to support the jury's conclusion that he possessed a chemical or that he possessed the requisite intent to manufacture methamphetamine. Initially, we again note that it was the court that determined that the pseudoephedrine which appellant possessed satisfied the "chemical" element of the statute. Appellant does not challenge the evidence supporting the jury's determination that he possessed the pseudoephedrine. He challenges only the sufficiency and weight of the evidence supporting the conclusion that pseudoephedrine is a chemical for purposes of the statute. Because we find that the trial court properly concluded, as a matter of law, that pseudoephedrine was a chemical for purposes of the statute, we find appellant's argument *Page 12 
on this issue without merit.
 {¶ 40} Appellant next challenges the evidence supporting the jury's conclusion that he possessed the requisite intent to manufacture methamphetamine. Appellant asserts that the weight of evidence requires a conclusion that he intended only to return to Tennessee and sell the pseudoephedrine pills. Appellant points to the testimony of the arresting officer who noted that appellant stated on the scene that his intent was to pass the generic Sudafed on to someone who would make methamphetamine with them. Appellant also asserts that the fact that he possessed no other items necessary for the manufacture of methamphetamine supports his assertion that intended only to sell the pills.
 {¶ 41} With regard to the ability to prove an offender's intentions, the Ohio Supreme Court has recognized that "intent, lying as it does within the privacy of a person's own thoughts, is not susceptible [to] objective proof." State v. Garner, 74 Ohio St.3d 49, 60, 1995-Ohio-168. Intent must often instead be inferred from the act itself and the surrounding circumstances, including the acts and statements of the defendant surrounding the time of the offense. State v. Hutchinson
(1999), 135 Ohio App.3d 459, 457.
 {¶ 42} After a thorough review of the evidence presented in this case, we cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice in determining that appellant possessed the intent to manufacture methamphetamine. The weight of the facts and circumstances of this case more than support the jury's conclusion that appellant intended to manufacture methamphetamine with the multiple boxes of generic Sudafed. As the state pointed out during trial, appellant and Grooms were methodically collecting pseudoephedrine from pharmacies along the highway. By the time they were stopped by Warren County deputies, they had already acquired multiple boxes of pseudoephedrine-based products. Many of these pills had been removed from their blister packs and either gathered in a pill bottle or loose on the floor. As argued by the state, the *Page 13 
fact that the pills had been removed from their blister packs indicates that appellant and Grooms intended to use the pills themselves, rather than provide them to someone else. Additionally, officers testifying at trial were also able to explain that individuals looking to manufacture methamphetamine will cross into Ohio specifically to purchase the pseudoephedrine-based products because Ohio is less restrictive and does not require identification from purchasers.
 {¶ 43} While appellant asserts that he possessed only one item needed for the manufacture of methamphetamine, it is clear that possession of a single chemical is sufficient under the statute. Further, the only evidence presented which suggested that appellant intended only to sell the pills, rather than to manufacture methamphetamine himself, is appellant's own self-serving statement made to arresting officers. The weight and credibility of appellant's statement was a determination for the jury and we find no reason to conclude that this statement, alone, outweighs the evidence presented to and accepted by the jury.
 {¶ 44} It is important to note that the jury in this case was given the alternative charge of complicity to illegal assembly, in the event that they believed that he intended only to sell the pills to someone in Tennessee. However, the jury rejected the complicity charge and found, beyond a reasonable doubt, that appellant intended to manufacture methamphetamine. We do not conclude that the jury clearly lost its way in this case. We find that appellant's conviction for illegal assembly or possession of chemicals for the manufacture of drugs is supported by the weight of the evidence. We therefore also necessarily find that this conviction is supported by sufficient evidence. Accordingly, appellant's second and third assignments of error are overruled.
 {¶ 45} Assignment of Error No. 5:
 {¶ 46} "THE TRIAL COURT ERRED BY IMPOSING MORE THAN THE MINIMUM *Page 14 
PRISON TERM."
 {¶ 47} In his fifth and final assignment of error, appellant argues that the trial court's imposition of a sentence beyond the minimum available prison term violated the rule set forth by the United States Supreme Court in Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, and the Ohio Supreme Court's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. Appellant argues that the trial court's reliance upon statutory findings in determining his sentence requires remand and resentencing.
 {¶ 48} The Ohio Supreme Court recently found portions of Ohio's statutory sentencing scheme unconstitutional in Foster. Among these sections was R.C. 2929.14(B) which required judicial findings before the imposition of a sentence beyond the minimum prison term. Foster
at paragraph one of the syllabus. As a result of the court's severance of this provision from Ohio's sentencing code, judicial fact-finding prior to the imposition of a sentence within the basic ranges of R.C. 2929.14(A) is no longer required. Foster at paragraph two of the syllabus.
 {¶ 49} The state agrees that appellant must be resentenced pursuant toFoster. Our review of the court's sentencing decision reveals that the trial court, in imposing appellant's sentence, noted that appellant had previously served prison time for multiple prior felony drug charges and was on parole when the current offense took place. R.C. 2929.14(B)(1).
 {¶ 50} The Foster court instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were utilized must be remanded for resentencing. Foster at ¶ 104. Consequently, we remand this case for resentencing consistent with Foster. Appellant's fifth assignment of error is sustained.
 {¶ 51} Having reviewed the assignments of error, we affirm the trial court's denial of appellant's motion to suppress and we affirm appellant's conviction for illegal assembly or possession of chemicals for the manufacture of drugs. However, we reverse the court's *Page 15 
sentencing decision and remand this matter for resentencing in accordance with this opinion.
 {¶ 52} Judgment reversed as to sentencing only.
BRESSLER, P.J., and POWELL, J., concur.
[1] Pseudoephedrine is a decongestant ingredient in many over-the-counter cold medicines, including Sudafed, and is a necessary ingredient in the manufacture of methamphetamine. *Page 1