OPINION
{¶ 1} Defendant-appellant, Dustin Chambers, appeals from his judgment of conviction in the Butler County Court of Common Pleas on one count of receiving stolen property. For the reasons outlined below, we affirm.
 {¶ 2} On November 17, 2005, appellant was indicted on one count of receiving stolen property, a fourth-degree felony in violation of R.C.2913.51(A), in relation to a September 2005 theft of several tools and pieces of equipment from CSX Transportation. Appellant *Page 2 
entered a plea of not guilty and proceeded to a jury trial. On February 3, 2006 the jury returned with a verdict of guilty. On February 9, 2006, appellant moved for a new trial, asserting that the prosecutor made improper statements during closing argument. Appellant was sentenced, on April 11, 2006, to a prison term of 18 months. On July 17, 2006, the trial court denied appellant's motion for a new trial. Appellant then filed this appeal and raises five assignments of error for our review. For purposes of discussion, we will address these assignments out of order.
 {¶ 3} Assignment of Error No. 1:
 {¶ 4} "THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF RECEIVING STOLEN PROPERTY IN VIOLATION OF R.C. 2913.51."
 {¶ 5} Assignment of Error No. 4:
 {¶ 6} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} Assignment of Error No. 2:
 {¶ 8} "THE TRIAL COURT IMPROPERLY DENIED DEFENDANT-APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIMINAL RULE 29."
 {¶ 9} In his first, second, and fourth assignments of error, appellant argues that the trial court improperly denied his Crim.R. 29 motion for acquittal and that there was insufficient evidence to support his conviction. He further argues his conviction was against the manifest weight of the evidence. Because the issues may be resolved together, we will address them jointly.
 {¶ 10} Appellant was convicted of receiving stolen property pursuant to R.C. 2913.51(A). That section provides that "no person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Because the combined value of the tools *Page 3 
was greater than $5,000 and less than $100,000, the offense was a felony of the fourth degree. R.C. 2913.51(C).[1]
 {¶ 11} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.State v. Thompkins, 78-Ohio St.3d 380, 386, 1997-Ohio-52. In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Wilson, Warren App. No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. The review of a court's denial of a motion for acquittal under Crim.R. 29 is governed by the same standard as that used for determining whether a verdict is supported by sufficient evidence. State v. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 14; State v. Jenks (1991),61 Ohio St.3d 259, syllabus. In reviewing a record for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 12} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. Wilson at ¶ 34. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. In such a review, an appellate court considers the credibility of the witnesses and the *Page 4 
weight to be given the evidence. State v. Walker, Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. "However, these issues are primarily matters for the [jury] to decide since the [jury] is in the best position to judge the credibility of the witnesses and the weight to be given the evidence presented." Id. The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal. Id. at ¶ 25, citing Thompkins, 78 Ohio St.3d at 387.
 {¶ 13} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Wilson at ¶ 35, citingState v. Lombardi, Summit App. No 22435, 2005-Ohio-4942, ¶ 9.
 {¶ 14} In the case before us, the evidence presented at trial demonstrated that, as a result of the investigation into the CSX Railroad theft, Hamilton City Police Detective Jim Smith spoke to an informant at the Butler County Jail. Based on information gathered in that meeting, Detective Smith obtained a search warrant for appellant's residence in Hamilton, Ohio. Detectives searched appellant's home on October 5, 2005, but did not locate any of the stolen equipment there. Detective Smith then interviewed appellant and questioned him about his involvement in the CSX break-in. At trial, Det. Smith testified that appellant claimed to have interrupted a group of kids stealing from CSX and explained that the kids dropped the tools as they ran away. Appellant stated that he picked the tools up to move them out of the alley, but then realized that he had put his fingerprints on them. Appellant claimed that he had been drinking and that the next thing he remembered was waking up and noticing that his car was sagging from the weight of the tools in his trunk. Det. Smith testified that appellant claimed to have panicked and drove the tools to the home of James Bedinghaus at 2330 *Page 5 
Jacksonburg Road, where he dumped them on a concrete pad and covered them. Appellant denied stealing the items from CSX.
 {¶ 15} Det. Smith typed up appellant's statement and read it to him. Det. Smith testified that appellant agreed that the statement was an accurate reflection of what he had said, but then refused to sign the statement. The unsigned written statement was then identified and later admitted into evidence. Det. Smith then testified that the CSX tools were in fact recovered from the house at 2330 Jacksonburg Road.
 {¶ 16} Detective Joe Gabbard also testified for the state. Det. Gabbard testified that on that same day he accompanied officers to a house at 2330 Jacksonburg Road to investigate the stolen CSX equipment. The home belonged to James Bedinghaus, who consented to a search of his property. Det. Gabbard testified that he told Mr. Bedinghaus what they were looking for and that Mr. Bedinghaus then pointed to the tools under a blue tarp. Det. Gabbard identified a series of pictures taken of the tools found under the tarp and testified that CSX supervisor Bill Dietz later identified the tools as those stolen from CSX. Det. Gabbard testified that the individual tools were very heavy, ranging from approximately 20 lbs. to close to 100 lbs. in weight.
 {¶ 17} The state also presented the testimony of James Bedinghuas. Bedinghaus' son, Matthew, was appellant's mother's boyfriend and lived with appellant and his mother at the time of this investigation. Bedinghaus testified that he had been at appellant's residence on the day that it was searched by police. Bedinghaus testified that he was told that another detective was waiting at his house to search there as well.
 {¶ 18} Bedinghaus further testified that appellant had called him, and asked if Bedinghaus could "do anything" with the tools. Appellant also asked if he could leave the tools with him. Bedinghaus testified that he didn't want the tools there because he didn't want to get in trouble. He remembered that appellant later drove to his house and dropped off the *Page 6 
tools, covering them with the blue tarp.
 {¶ 19} Appellant argues that the state's evidence, proffered through Bedinghaus, was discredited when Bedinghaus, on cross-examination, testified that he could not be sure who exactly called him about bringing the tools to his property. Bedinghaus testified, "I'm thinking it was [appellant]. I don't know. I'm not sure." When asked if it could have been Travis Baker, who also lived with appellant, Bedinghaus responded, "I'm not real sure. I don't think it was." Bedinghaus also testified that he recalled seeing appellant's car drive up and leave the tools on his property. On cross-examination, he admitted that he didn't see who was driving appellant's car and knew that Baker had a set of keys and often drove it without permission. However, on re-direct examination, Bedinghaus again testified that he was "pretty sure" that it was appellant who called him and asked if he wanted some jackhammers. Bedinghaus also testified again that it was appellant that dropped the tools off on the concrete pad and covered them with the tarp.
 {¶ 20} In the defense's case-in-chief, appellant presented the testimony of his mother, Rosetta Chambers, and her live-in boyfriend, Matthew Bedinghaus. Both witnesses corroborated earlier testimony that Travis Baker had keys to appellant's vehicle and often drove it without permission. Travis Baker also testified, and claimed that an individual by the name of David Miller was responsible for the CSX theft and had brought the tools to the Jacksonburg Road address. And finally, appellant testified on his own behalf. Appellant testified that the information in Det. Smith's statement was false and that he had never taken the CSX equipment to James Bedinghaus' residence on Jacksonburg Road. Appellant denied any involvement with the CSX tools.
 {¶ 21} After a thorough review of the evidence presented at trial, we cannot say that the jury in this case clearly lost its way or created a manifest miscarriage of justice. The testimony of the Det. Smith established that appellant disposed of the CSX tools at the home *Page 7 
of James Bedinghaus, knowing the tools to be stolen. See, R.C.2913.51(A). While our review in a manifest weight challenge includes a review of the credibility of the testifying witnesses, we find no reason to disregard the jury's decision to believe the testimony of Det. Smith over that of appellant and his claim that his statement to the detective was fabricated. Further, the testimony of James Bedginhaus established that appellant attempted to enlist his help to store and sell the stolen tools, and we find no reason to disregard the jury's decision to regard that testimony as more credible than that of appellant's witnesses.
 {¶ 22} When viewed in a light most favorable to the prosecution, we find that the evidence presented was sufficient for a rational trier of fact to find the elements of receiving stolen property proven beyond a reasonable doubt. Appellant's conviction is supported by sufficient evidence and the trial court properly denied appellant's Rule 29 motion. Further, appellant's conviction is not against the manifest weight of the evidence. Accordingly, appellant's first, second and fourth assignments of error are overruled.
 {¶ 23} Assignment of Error No. 3:
 {¶ 24} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO INSTRUCT THE JURY THAT IT COULD NOT FIND APPELLANT GUILTY SOLELY ON THE BASIS OF HIS UNCORROBORATED ADMISSION."
 {¶ 25} In his third assignment of error, appellant asserts that the trial court abused its discretion when it denied appellant's request for a jury instruction. Appellant argues that the trial court was required to instruct the jury that "a confession must be corroborated by additional evidence. A defendant may not be convicted by a confession alone," and that its failure to do so was arbitrary, unreasonable, and unconscionable.
 {¶ 26} A determination as to which jury instructions are proper is a matter left to the sound discretion of the trial court. State v.King, Butler App. No. CA2004-03-058, 2005-Ohio-3623, ¶ 31. We review a trial court's refusal to give a requested jury instruction for an abuse of *Page 8 
discretion. Id., citing State v. Wolons (1989), 44 Ohio St.3d 64, 68. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id. The term has further been defined as "a view or action that no conscientious judge, acting intelligently, could honestly have taken." State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.
 {¶ 27} Appellant correctly asserts that a defendant may not be convicted by his own extrajudicial inculpatory statement alone.State v. Black (1978), 54 Ohio St.2d 304; State v. Tirey (Dec. 21, 1992), Warren App. No. CA92-06-050. There must be some independent evidence, establishing the corpus delicti of the crime. Id. "The corpus delicti of a crime is the body or the substance of the crime, included in which are usually two elements: the act, and the criminal agency of the act." Black at 307. In Black, the Ohio Supreme Court explained that, while independent evidence of the corpus delicti is required, "the quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case." Id. at 307, quoting State v.Maranda (1916), 94 Ohio St. 364. Instead, "[i]t is sufficient if there is some evidence outside of the confession that tends to provesome material element of the crime charged." Id. (emphasis added).
 {¶ 28} Ohio case law discussing the need for independent evidence deals almost exclusively with the admissibility of a defendant's extrajudicial inculpatory statements, rather than the necessity of jury instructions. However, at least one Ohio case found that, where the corpus delicti was established by some independent evidence, a defendant was not prejudiced by his attorney's failure to request an instruction informing the jury of the need for corroboration. State v. Whately
(Sept. 28, 1994), Hamilton App. No. C-930737 (finding independent evidence and rejecting of ineffective assistance of counsel claim). From this case, then, we can determine that where some independent evidence establishes the corpus *Page 9 
delicti, no instruction is required.
 {¶ 29} We also find persuasive guidance in our federal Sixth Circuit. In United States v. Marshall (C.A.6, 1988), 863 F.2d 1285, a case cited by appellant, the circuit court found that where the state's case relied solely on the defendant's admissions regarding the distribution of cocaine, the trial court committed reversible error in failing to instruct the jury that corroboration of the corpus delicti was required. However, in a later case, the circuit court distinguishedMarshall and found that no jury instruction was required where the state had presented independent evidence of the corpus delicti. United Statesv. Harris (C.A.6, 1994), 16 F.3d 1222, see, also, United States v.Dickerson (C.A.D.C.1999), 163 F.3d 639 (declining to followMarshall and noting that questions regarding the admissibility of a defendant's inculpatory statements are questions for the court and not the jury).
 {¶ 30} After a review of the transcript and the relevant case law, it is clear that the trial court in this case did not abuse its discretion in denying appellant's requested jury instruction. The court specifically referred to the Ohio Supreme Court's decision inBlack and the federal cases cited above when determining whether there was sufficient independent evidence of the corpus delicti in this case. The court noted that the testimony of the two detectives and the testimony of Mr. Bedinghaus was sufficient independent evidence to sustain a conviction for receiving stolen property and therefore rejected appellant's requested instruction.
 {¶ 31} We agree that the corpus delicti of the crime of receiving stolen property was sufficiently established in this case. Independent evidence was presented to establish that tools had been stolen from CSX and that appellant had disposed of those tools on Bedinghaus' property. Because the state's case against appellant did not rest on appellant's unsigned statement alone, but included independent evidence establishing the crime of receiving stolen property, no instruction was required. Further, it is clear that the court's decision to reject appellant's requested instruction was neither arbitrary, unreasonable, or *Page 10 
unconscionable. Accordingly, appellant's third assignment of error is overruled.
 {¶ 32} Assignment of Error No. 5:
 {¶ 33} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A NEW TRIAL BASED ON PROSECUTORIAL MISCONDUCT."
 {¶ 34} In his fifth and final assignment of error, appellant asserts that the trial court abused its discretion in denying his motion for a new trial. Appellant argues that the prosecutor engaged in misconduct during rebuttal closing argument by intentionally misrepresenting the evidence. The trial court denied appellant's motion for a new trial by entry filed July 17, 2006.
 {¶ 35} Crim R. 33(A)(2) provides that "[a] new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * *
 {¶ 36} "(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state; * * *".
 {¶ 37} Again, the decision to grant or deny a motion for a new trial is within the sound discretion of the trial court. State v. Hawkins
(1993), 66 Ohio St.3d 339, 350. A reviewing court must, without substituting its own judgment for that of the trial court, determine whether or not the trial court abused its discretion in denying a new trial motion. Id.
 {¶ 38} The test for prosecutorial misconduct is whether the remarks made by the prosecutor were improper, and, if so, whether the remarks prejudicially affected substantial rights of the defendant. State v.Larison (Sept. 24, 2001) Warren App. No. CA2000-08-074; State v.Lott (1990), 51 Ohio St.3d 160. Further, a prosecutor has a duty to avoid making comments deliberately aimed at misleading the jury and to refrain from discussing matters not supported by admissible evidence. Id.
 {¶ 39} However, a prosecutor is afforded wide latitude in closing arguments and such *Page 11 
arguments must be viewed in their entirety to determine whether the disputed remarks were unfairly prejudicial. Id., citing State v.Moritz (1980), 63 Ohio St.2d 150. Additionally, misconduct of a prosecutor at trial will generally not be grounds for reversal unless the misconduct is so pervasive as to deprive the defendant of a fair trial. State v. Braxton (1995), 102 Ohio App.3d 28. "The touchstone of analysis is `the fairness of the trial, not the culpability of the prosecutor.'" Id. at 42, quoting State v. Underwood (1991),73 Ohio App.3d 834.
 {¶ 40} In his motion for a new trial, appellant asserted that the prosecuting attorney improperly argued that the only reason that the detectives in this case searched Mr. Bedinghaus' residence at 2330 Jacksonburg Road was because appellant provided the address in his statement to police. Appellant asserts that this statement to the jury was untrue and misleading because evidence demonstrated that the search of appellant's residence at 1123 Heaton Street was executed at the same time as the search at 2330 Jacksonburg Road; not subsequent to appellant's interview with Det. Smith. At the hearing on his motion for a new trial, appellant referred to previous statements of Det. Gabbard which he claimed supported his argument that the searches were simultaneous.[2] Appellant further referenced the trial testimony of James Bedinghaus, in which Mr. Bedinghaus stated that he was at appellant's residence on the morning of the search when he was informed that a detective was waiting to conduct a similar search at his residence. Appellant argued that the prosecutor's statements to the jury in rebuttal closing argument were misleading and prejudicial.
 {¶ 41} In response, the state argued that the prosecutor's comments fell within *Page 12 
reasonable closing argument and did not mislead or misstate evidence. Because appellant's defense at trial rested on the claim that the detectives had fabricated the statement given to Det. Smith, the prosecutor had attempted to refute that claim in closing argument. The prosecuter had argued in closing that he had asked appellant, during trial testimony, how the police learned of the location of the stolen tools, if not for the statements to Det. Smith. Appellant, during his trial testimony, had responded that he did not know. The prosecutor further argued that there was no evidence to explain how the police ended up at 2330 Jacksonburg Road other than the fact of appellant's statement, in which he had admitted to dropping off the tools at that location.
 {¶ 42} The only evidence presented at trial regarding the sequence of events as it relates to the timing of the two searches was the testimony of James Bedinghaus. Mr. Bedinghaus testified as follows:
 {¶ 43} STATE: "Did you have an occasion where the police came and searched your property?"
 {¶ 44} BEDINGHAUS: "Yeah. Well, no. I was by my son's house that morning and they had got in his property, broke down doors and everything like they do like on TV."
 {¶ 45} STATE: "Well, what about your property on 2330 Jacksonburg Road?"
 {¶ 46} BEDINGHAUS: "Well, I was trying to park and there was a detective out in the road and asked me who I was and that and told me there was another detective that was going to meet me at my house and they had the same kind of warrant for my house."
 {¶ 47} It is not clear from this testimony specifically when Mr. Bedinghaus was at appellant's residence or when the search of the Bedinghaus residence occurred as it relates to the search of appellant's residence. This is the only statement in evidence as to the timing of these searches. While appellant referenced statements of Det. Gabbard in the hearing on his motion for a new trial, we do not have those exhibits on appeal and can not determine *Page 13 
their relevance. Therefore, we are unable to determine if the prosecutor's statements to the jury in rebuttal closing argument were either untrue or misleading. However, even if we were to find that the prosecutor's statement was improper or misleading, we cannot say that the isolated remark was so prejudicial as to deprive appellant of a fair trial. The remark and its potential effect aside, sufficient evidence remained to sustain appellant's conviction for receiving stolen property. Accordingly, we cannot say that the trial court abused its discretion in denying appellant's motion for a new trial. Appellant's fifth assignment of error is overruled.
 {¶ 48} Judgment affirmed.
BRESSLER and WALSH, JJ., concur.
[1] This element is not disputed on appeal.
[2] Appellant referenced two exhibits during his argument, namely exhibits A and B, evidencing Det. Gabbard's statements. However, it does not appear from the transcript of that hearing that the exhibits were admitted as evidence and we do not find them in the record on appeal. *Page 1