[Cite as *State v. Litton*, 2016-Ohio-7913.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

STATE OF OHIO,                                        :

        Plaintiff-Appellee,                       :

                                   :

    - vs -

                                   :

COBY R. LITTON,                                       :

        Defendant-Appellant.                     :

CASE NO. CA2016-04-005

O P I N I O N
11/28/2016

CRIMINAL APPEAL FROM EATON MUNICIPAL COURT
Case No. 2015-CRB-735

Martin P. Votel, Preble County Prosecuting, Kathryn M. West, Preble County Courthouse, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

Wayne C. Staton, 110 North Beech Street, Oxford, Ohio 45056, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Coby R. Litton, appeals from his convictions in the Eaton Municipal Court for domestic violence and endangering children. For the reasons outlined below, we affirm.

{¶ 2} On September 30, 2015, a sergeant with the New Paris Police Department filed a complaint charging Litton with domestic violence in violation of R.C. 2919.25(A) and endangering

children in violation of R.C. 2919.22(B)(1), both first-degree misdemeanors.[1]  According to the complaint, the charges stemmed from allegations that on September 18, 2015, Litton hit his son, A.L., with a rod and threw the child into a wall after A.L. failed to complete his homework in a timely fashion.  This caused A.L. to suffer bruising, some of which was severe, to his buttocks, torso, leg, and forehead.  The complaint further stated that Litton acknowledged spanking A.L. once, "but claimed it was with a wooden spoon and that he hadn't seen any bruises because A.L. takes a bath by himself[.]"  At the time of the alleged offense, A.L. was eight years old.

{¶ 3}  The matter ultimately proceeded to a one-day bench trial held on January 22, 2016.  During trial, the trial court heard testimony from Cynthia Snyder, a social worker with Preble County Job and Family Services, A.L., and Litton, among others.  As part of this testimony, Snyder testified that she interviewed A.L. on two occasions, once on September 21, 2015 and again on September 25, 2015.  According to Snyder, during both of these interviews, A.L. told her Litton had "spanked" him with a rod, threw him into the wall, and dumped toys over his head after A.L. had "difficulty with his homework."

{¶ 4}  Snyder's testimony was similar to A.L.'s own trial testimony.  A.L. testified that Litton got mad and "spanked" him on his buttocks and legs with his hand, a rod, and a fishing pole because he took too long to finish his homework.  A.L. also testified Litton then "grabbed me up by my hand and slammed me against the wall" and "threw toys on me."  It is undisputed that the prosecuting attorney did not provide Litton with a recording of the September 21, 2015 interview as part of its responses to Litton's discovery requests.  Furthermore, when asked why a recording was not provided to the prosecuting                                                                                                     attorney,

---

1. Litton claims the complaint omitted the subsection he was charged with under R.C. 2191.22, the endangering children statute.  The record does not support Litton's contention for the complaint explicitly states that the endangering children charge was brought pursuant to R.C. 2919.22(B)(1).

Snyder testified that they "do not make a hard copy of every interview we conduct," but that one could be made available. Litton's trial counsel declined Snyder's offer for a copy and proceeded with his cross-examination, albeit over his objection.

{¶ 5} On March 7, 2016, the trial court issued a written decision finding Litton guilty as charged. In so holding, the trial court determined that "[A.L.'s] testimony was consistent with that he told [Snyder] on two occasions, his grandmother, and hospital personnel." The trial court also stated that "[f]or a child of [A.L.'s] age to describe how he got those bruises so consistently on many occasions and over a period of several months is compelling and convincing." Implicit within this holding is the trial court's determination that Litton's testimony that A.L. may have suffered his injuries as a result of wrecking his bicycle lacked credibility. The same is true regarding Litton's claim that A.L.'s injuries were the result of permissible parental discipline resulting from Litton spanking A.L. once with a wooden spoon.

{¶ 6} On March 21, 2016, two weeks after the trial court issued its decision, Litton filed a motion for a new trial pursuant to Crim.R. 33(A)(2) alleging that both the prosecuting attorney and Snyder engaged in misconduct by failing to provide him with a recording of the September 21, 2015 interview between Snyder and A.L. According to Litton, this prejudiced his defense since he was unable to cross-examine A.L. regarding any inconsistencies he may have made during this initial interview. Litton also argued that he should be granted a new trial pursuant to Crim.R. 33(A)(4) since the trial court's verdict was not supported by sufficient evidence.

{¶ 7} On April 14, 2016, the trial court issued a decision denying Litton's motion for a new trial. In so holding, the trial court stated that it had "listened to all of the evidence and found no other explanation for the bruises and so forth to [A.L.]." The trial court further stated that "[i]t's not a personal thing it's a matter of what the evidence is and how the evidence was presented that led the [c]ourt to that decision." After denying Litton's motion, the trial court sentenced Litton to serve 90

- 3 -

days in jail, 75 days of which were suspended, ordered him to pay a total fine of $300, and placed him on two years of probation. Litton now appeals from his convictions, raising three assignments of error for review.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE STATE COMMITTED REVERSIBLE ERROR BY FAILING TO DISCLOSE [A.L.'s] INITIAL INTERVIEW WITH CYNTHIA SNYDER BEFORE TRIAL.

{¶ 10} In his first assignment of error, Litton argues the state violated Crim.R. 16(B)(7) by failing to provide him with a recording of the September 21, 2015 interview between Snyder and A.L. as part of its responses to his discovery requests. We disagree.

{¶ 11} Crim.R. 16 governs discovery in a criminal case. *State v. Hebdon*, 12th Dist. Butler Nos. CA2012-03-052 and CA2012-03-062, 2013-Ohio-1729, ¶ 47. As part of that rule, Crim.R. 16(B)(7) requires the disclosure of "[a]ny written or recorded statement by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal." However, as noted by the Ohio Supreme Court, a violation of Crim.R. 16 constitutes reversible error "only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995), citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983). In this context, the term "willful" has been said to involve "intent, purpose or design to injure." *State v. Bowshier*, 2d Dist. Clark No. 06-CA-41, 2007-Ohio-5364, ¶ 31.

{¶ 12} As noted above, prior to trial, it is undisputed that the prosecuting attorney did not provide Litton with a recording of the September 21, 2015 interview between A.L. and Snyder. However, Litton's trial counsel explicitly stated that he could not place any blame on the prosecuting attorney for that failure "because apparently, uh, the witness did not tell them" so "I'm gonna move

on[.]" As a result, while it certainly would have been better practice for Snyder to inform the prosecuting attorney of this interview so that the prosecuting attorney could then disclose this interview to Litton prior to trial, this nondisclosure falls short of what could be considered a willful violation of the prosecuting attorney's duties under Crim.R. 16(B)(7). Rather, we believe this is something that was merely inadvertent and unintentional. Again, as Snyder even testified, they "do not make a hard copy of every interview we conduct," but that one could be made available.

{¶ 13} Moreover, as the record reveals, Litton's trial counsel made no attempt to ask for a continuance so that he could review the recording of the September 21, 2015 interview even after Snyder offered to provide him with a copy. Instead, albeit over his objection, Litton's trial counsel "moved on" and continued his cross-examination regarding A.L.'s statements during both the September 21, 2015 and September 25, 2015 interviews, statements that, just as the trial court found, remained generally consistent throughout. Specifically, that Litton had caused A.L.'s injuries by hitting him with various objects multiple times, throwing him into a wall, and dumping toys over his head. Therefore, even if the prosecuting attorney could be said to have willfully violated its duties under Crim.R. 16(B)(7), Litton still cannot show that foreknowledge of the September 21, 2015 interview would have benefitted him in the preparation of his defense in any way, nor can Litton establish that he suffered any resulting prejudice therefrom. Accordingly, while we caution the prosecuting attorney to avoid similar situations in the future, we nevertheless find Litton's first assignment of error to be without merit and overrule the same.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A NEW TRIAL.

{¶ 16} In his second assignment of error, Litton argues the trial court erred by denying his motion for a new trial raised pursuant to Crim.R. 33(A)(2) and (A)(4). We again disagree.

**Standard of Review for Crim.R. 33 Motion for a New Trial**

{¶ 17} "Crim.R. 33 motions for a new trial are not to be granted lightly." *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 21, citing *City of Toledo v. Stuart*, 11 Ohio App.3d 292, 293 (6th Dist.1983). The decision to grant or deny a motion for a new trial pursuant to Crim.R. 33 rests within the sound discretion of the trial court. *State v. Hoop*, 12th Dist. Brown No. CA2012-10-019, 2013-Ohio-3078, ¶ 11. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

**Crim.R. 33(A)(2): Misconduct of Prosecuting Attorney or Witnesses for the State**

{¶ 18} Pursuant to Crim.R. 33(A)(2), a new trial may be granted when the prosecuting attorney or witnesses for the state engaged in misconduct that materially affected the defendant's substantial rights. This inquiry consists of a two-step determination. *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015-Ohio-5042, ¶ 48. "The first determination is whether misconduct actually occurred, and the second is whether that misconduct materially prejudiced the defendant's substantial rights." *Id.* Misconduct will generally not be grounds for reversal unless the misconduct is so pervasive as to deprive the defendant of a fair trial. *State v. Chambers*, 12th Dist. Butler No. CA2006-07-178, 2007-Ohio-4732, ¶ 39.

{¶ 19} Similar to his argument raised in his first assignment of error, Litton claims that both prosecuting attorney and Snyder engaged in misconduct by failing to disclose the existence of a recording of the September 21, 2015 interview between Snyder and A.L. However, as noted above, we find this nondisclosure was something that can be classified as merely inadvertent. Furthermore, even after learning of its existence, Litton's trial counsel never requested a continuance to review the recording, nor did he accept Snyder's offer to provide him with a copy of the recording. Under these circumstances, we simply cannot say that either the prosecuting attorney or Snyder engaged in

misconduct that materially prejudiced Litton's substantial rights. Litton's claim otherwise lacks merit.

**Crim.R. 33(A)(4): Verdict Not Sustained by Sufficient Evidence**

{¶ 20} Pursuant to Crim.R. 33(A)(4), a new trial may be granted where "the verdict is not sustained by sufficient evidence or is contrary to law." Although technically distinct from a Crim.R. 29 motion for acquittal, a motion for a new trial raised under Crim.R. 33(A)(4) "nonetheless tests the legal sufficiency of the conviction." *State v. Vitantonio*, 11th Dist. Lake No. 2012-L-144, 2013-Ohio-4100, ¶ 9; *State v. Halsell*, 9th Dist. Summit No. 24464, 2009-Ohio-4166, ¶ 24 ("[o]ur concern is the same whether sufficiency is raised in the context of Crim.R. 33[A][4] or Crim.R. 29"). Thus, Crim.R. 29 and Crim.R. 33(A)(4) motions are reviewed under the same standard of review. *State v. Stephens*, 11th Dist. Trumbull No. 2001-T-0044, 2002-Ohio-2976, ¶ 26.

{¶ 21} The standard of review for a denial of a Crim.R. 29 motion is the same used to review a sufficiency of the evidence claim. *State v. Robinson*, 12th Dist. Clermont No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

**{¶ 22}** As noted above, Litton was convicted of domestic violence in violation of R.C. 2919.25(A) and endangering children in violation of R.C. 2919.22(B)(1). Pursuant to R.C. 2919.25(A), "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." On the other hand, pursuant to R.C. 2919.22(B)(1), no person shall "abuse" a child. The word "abuse" is not defined by the criminal statutes. *State v. Hickman*, 8th Dist. Cuyahoga No. 99442, 2013-Ohio-4192, ¶ 19. However, the juvenile statutes define an "abused child" as one who "'suffers physical or mental injury that harms or threatens the child's health or welfare.'" *Newburgh Hts. v. Cole*, 166 Ohio App.3d 826, 2006-Ohio-2463, ¶ 9 (8th Dist.), quoting R.C. 2151.031(D). The term "physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶ 23}** Litton argues there was insufficient evidence to support his convictions because A.L.'s testimony "is not consistent with the injuries he sustained" and more likely the result of him wrecking his bicycle. However, A.L. specifically testified that the bruising was not caused by him wrecking his bike. Rather, A.L. testified that his injuries occurred after Litton got mad and "spanked" him on his buttocks and legs with his hand, a rod, and a fishing pole because he was taking too long to finish his homework. This included testimony from A.L. that Litton hit him with the rod so hard that "he broke it on my hiney." A.L. also testified that Litton then "grabbed me up by my hand and slammed me against the wall" and "threw toys on me." Pictures of A.L.'s injuries were admitted into evidence showing large, deep colored bruises on his buttocks, legs, arm, and hand, as well as an abrasion on his forehead. This testimony, if believed, coupled with the pictures of A.L.'s injuries, was more than sufficient to support Litton's convictions for domestic violence and endangering children.

**{¶ 24}** Nevertheless, albeit as part of his third assignment of error, Litton argues his convictions must be reversed because he testified that he merely spanked A.L. one time with a wooden spoon, thus constituting permissible parental discipline. The trial court clearly found Litton's claim that he only

spanked A.L. once lacked credibility when compared to the testimony of A.L. As noted above, the trial court found A.L.'s testimony regarding how he received his injuries was both "compelling and convincing." As the trier of fact is in the best position to judge the credibility of the witnesses, "we will not disturb the trial court's finding in regard to which version of events was credible, and which was not." *State v. Bonner*, 12th Dist. Butler No. CA2012-09-195, 2013-Ohio-3670, ¶ 13.

{¶ 25} In order to use parental discipline as a defense, the discipline must be both proper and reasonable. *State v. Zielinski*, 12th Dist. No. CA2010-12-121, 2011-Ohio-6535, ¶ 24, citing *State v. Suchomski*, 58 Ohio St.3d 74, 75 (1991). Taking A.L.'s testimony as true, we find nothing about Litton's conduct that convinces this court he was engaged in proper and reasonable parental discipline of A.L. Again, according to A.L.'s testimony, which the trial court found credible, Litton got mad and hit A.L. with his hand, a rod, and a fishing pole before throwing him into a wall and dumping his toys over his head after he failed to complete his homework in a timely fashion. This caused A.L. to suffer bruising, some of which was severe, to his buttocks, legs, arm, and hand, as well as an abrasion on his forehead. Litton's reaction to A.L. not completing his homework more quickly was neither proper, nor reasonable. *State v. Luke*, 3d Dist. Union No. 14-10-26, 2011-Ohio-4330, ¶ 21 (defining "proper" as "suitable or appropriate" and defining "reasonable" as "not extreme or excessive"). Therefore, because there was sufficient evidence to support Litton's convictions for domestic violence and endangering children, the trial court did not err by denying his motion for a new trial.

{¶ 26} In light of the foregoing, having found no merit to any of Litton's claims herein, Litton's second assignment of error is overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} APPELLANT'S CONVICTIONS FOR DOMESTIC VIOLENCE AND ENDANGERING CHILDREN ARE BASED UPON LEGALLY INSUFFICIENT EVIDENCE BECAUSE APPELLANT ENGAGED IN REASONABLE AND PROPER PARENTAL DISCIPLINE.

**{¶ 29}** In his third assignment of error, Litton argues his convictions for domestic violence and endangering child were not supported by sufficient evidence and were otherwise against the manifest weight of the evidence. As we have already determined that there was sufficient evidence to support Litton's convictions when reviewing Litton's second assignment of error, we will limit our analysis in this assignment of error to whether his convictions were against the manifest weight of the evidence. After a thorough review of the record, we find that they were not.

**{¶ 30}** A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. However, while appellate review includes the responsibility to consider the credibility of witnesses and the weight given to the evidence, these issues are primarily matters for the trier of fact to decide. *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

**{¶ 31}** Litton claims his convictions were against the manifest weight of the evidence because A.L.'s testimony was inconsistent and unreliable since it became "more elaborate with every telling." Litton also claims his convictions were against the manifest weight of the evidence since there was testimony A.L. may have received some of his bruising from wrecking his bicycle. However, as noted

above, the trial court heard all of the testimony and determined that A.L.'s version as to how he received his injuries was "compelling and convincing." This was well within the trial court's purview as the trier of fact. Moreover, although faced with conflicting evidence, it is well-established that "a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. Therefore, because this is not one of those extraordinary cases where the evidence presented at trial weighs heavily in favor of acquittal, Litton's third assignment of error is overruled.

**{¶ 32}** Judgment affirmed.

M. POWELL, P.J., and RINGLAND, J., concur.