[Cite as *State v. Fields*, 2014-Ohio-2900.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-11-105 |
| | : | O P I N I O N |
| - vs - | | 6/30/2014 |
| | : | |
| SAMUEL FIELDS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 13 CR 29187

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Timothy J. McKenna, 125 East Court Street, Suite 950, Cincinnati, Ohio 45202, for defendant-appellant

**PIPER, J.**

{¶ 1}  Defendant-appellant, Samuel Fields, appeals his convictions and sentence in the Warren County Court of Common Pleas for assault of a corrections officer and obstructing official business.

{¶ 2}  Fields is an inmate at the Lebanon Correctional Institution (the prison).  In January 2013, Fields was located in the prison's cafeteria talking with two fellow inmates.

Corrections Officer Deon Isome approached Fields and told the three men to leave the cafeteria. Fields turned to Isome and said "fuck you." Fields then stood up and took an aggressive stance toward Isome, and made his hands into fists. Based on Fields' stance and making his hands into fists, Isome sprayed his can of mace in the direction of Fields. Fields responded by punching Isome in the face, and the two engaged in a fistfight. Other corrections officers were called to the scene and subdued Fields. Isome suffered a bloody nose and two broken fingers as a result of the attack.

{¶ 3} Fields was charged with assault, obstructing official business, and felonious assault. Fields pled not guilty to the charges, and the matter proceeded to a two-day jury trial. Immediately before the trial started, the state nolled the felonious assault count, and the trial court held a hearing regarding courtroom safety. After hearing evidence that Fields had a violent history of attacking corrections officers and guards, the trial court ordered that Fields stay in belly chains and shackles during the trial.

{¶ 4} The trial then commenced, and the jury heard testimony from Isome, Nicholas Echcaroff, another corrections officer at the prison, as well as James McNally, a nurse at the prison. Fields was the only defense witness. The jury found Fields guilty of both charges, and the trial court sentenced Fields to one-year prison terms on each count to be served consecutively for an aggregate sentence of two years. Fields now appeals his convictions and sentence, raising the following assignments of error. For ease of discussion, we will address Fields' first two assignments together.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY NOT GRANTING THE RULE 29 MOTION AS THERE WAS INSUFFICIENT EVIDENCE TO CONVICT.

{¶ 7} Assignment of Error No. 2:

**{¶ 8}** THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BECAUSE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 9}** Fields argues in his first two assignments of error that his convictions were against the manifest weight of the evidence and were not supported by sufficient evidence.

**{¶ 10}** When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds.

**{¶ 11}** A manifest weight challenge examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *Wilson*, 2007-Ohio-2298.

> In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Cummings*, 12th Dist. Butler No. CA2006-09-224, 2007-Ohio-4970, ¶ 12.

**{¶ 12}** While appellate review includes the responsibility to consider the credibility of witnesses and the weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a

- 3 -

conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 13} Fields was convicted of assault in violation of R.C. 2903.13(A) which states, "no person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Fields was also convicted of obstructing official business in violation of R.C. 2921.31(A), which provides, "no person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶ 14} During trial, Fields argued that he acted in self-defense when he assaulted Isome. In order to prove self-defense, Fields had to establish: (1) that he was not at fault in creating the situation giving rise to the affray, (2) that he had a bona fide belief that he was in imminent danger of bodily harm and that his only means of escape from such danger was in the use of such force, and (3) that he did not violate any duty to retreat or avoid the danger. *State v. McKinney*, 12th Dist. Butler No. CA2011-08-162, 2012-Ohio-4521.

{¶ 15} After reviewing the record and viewing the evidence in a light favorable to the prosecution, we find that Fields' convictions were supported by sufficient evidence, that Fields' convictions were not against the manifest weight of the evidence, and that Fields failed to prove that he acted in self-defense.

{¶ 16} Isome testified that he was employed at the prison as a corrections officer and that on the day of the incident, he was assigned to patrol the cafeteria. Isome was responsible for insuring that the inmates moved efficiently through the eating process so as to permit all inmates an opportunity to eat in a peaceful environment.

{¶ 17} Isome testified that he observed Fields talking to two other inmates, rather than

eating. Isome made eye contact with the group, and intimated that their time in the cafeteria was over and that they were required to leave. Isome walked around the cafeteria a bit, and returned to the table where Fields was sitting with the other inmates. Isome again indicated that it was time for the three to leave the cafeteria, but the three men remained at the table and refused to leave. Isome made a verbal command for the men to "get up and go." When the men remained at the table, Isome walked toward the table and ordered again that the men leave the cafeteria. Isome testified that after he had told the men three times to leave, Fields looked at him and said "fuck you."

{¶ 18} Isome testified that after Fields made his insolent remark, Fields stood up, squeezed his fists, and looked at him. Isome interpreted Fields' movement as an "aggressive stance," and that Fields was readying himself for a physical confrontation. Isome testified that based on Fields' aggressive stance and failure to obey orders, he reached for his mace canister and tried to deploy it. The other two inmates who had been speaking with Fields moved away from the table where they were sitting, while Fields attacked Isome.

{¶ 19} As soon as Isome tried to spray the mace toward Fields, Fields punched Isome in the face with a closed fist. Isome began to fight back, and the two men engaged in a fistfight and struggle. When other corrections officers arrived in the cafeteria, they too ordered Fields to stop resisting but he refused to do so. Eventually, multiple corrections officers were able to pull Fields off of Isome and subdue him. The state showed a video of the incident, which supported Isome's testimony. Isome testified that his face and nose was bloodied and two fingers on his hand were broken as a result of Fields' attack. Isome also had to have surgery on his hands, and pins were placed in the bones to facilitate healing.

{¶ 20} Corrections Officer Nick Echcaroff then testified, and stated that he was working at the prison on the day of the incident. Part of his job responsibilities included giving inmates orders in order to supervise them. Echcaroff testified that he was patrolling

the hallways when he received a call that another correction officer had been attacked in the cafeteria. Echcaroff ran to the cafeteria and saw Fields hitting Isome, and Isome falling to the ground. Echcaroff testified that he was trying to subdue Fields, but that Fields resisted. Echcaroff stated that it took approximately seven other corrections officers to finally subdue Fields. Echcaroff sustained a small injury to his hand as a result of his attempt to subdue Fields.

{¶ 21} James McNally, a registered nurse employed at the prison, testified that he was working in the infirmary on the day of the incident. He testified that he saw Echcaroff in the infirmary after the incident and that Echcaroff had a small cut to his right index finger and had chemical spray on his face. McNally also examined Isome and indicated that Isome suffered blunt force trauma to his face, a bloody nose, had chemical spray on his body, and suffered a hand injury. McNally also testified that he tried to examine Fields, but that Fields was too combative, and "verbally abusive to every one [sic] in the room." Fields yelled at the people in the room, asking "is that all you got?" and using expletives. Although Fields did not permit an examination, McNally performed a visual inspection and did not see any cuts, scratches, blood, or injuries on Fields' body.

{¶ 22} After hearing from Isome, Echcaroff, and McNally, the state rested. Fields testified in his own defense and asserted that he acted in self-defense on the day in question. Fields testified that after Isome ordered him to leave, and approached the table where he and the other inmates were sitting, he stood up to show Isome his identification badge as proof that he had only recently arrived in the cafeteria and should be given more time to eat. Fields testified that as he was trying to explain his entitlement to stay in the cafeteria, Isome sprayed him with mace. Fields next testified that he punched Isome in order to protect himself.

{¶ 23} Despite Fields' assertion that he was acting in self-defense, he never

established that he was not at fault in creating the situation giving rise to the affray or that he had a bona fide belief that he was in imminent danger of bodily harm and that his only means of protecting himself was to attack Isome. Specifically, Fields admitted on cross-examination that he had thrown the first punch and that he waited until after Isome had already deployed the mace, to attack him. Fields testified that he "overpowered" Isome and "hit him" so that he felt Isome's body "go limp." Fields also testified that he assumed that he had "knocked out" Isome. Fields, however, never testified that he had any previous interactions with Isome where Isome caused him physical harm or did anything to make Fields believe that he had to attack Isome in order to protect himself.

{¶ 24} Despite Fields' testimony that he acted in self-defense, the jury chose to believe the state's witnesses regarding the way the incident occurred, and that Fields was not justified in attacking Isome and later disobeying the orders of the other corrections officers. By virtue of its verdict, the jury did not find Fields' testimony or defense credible, and we will not disturb that finding on appeal, as the jury was in the best position to determine matters of credibility.

{¶ 25} Having found that Fields' convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, his first and second assignments of error are overruled.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT ERRED WHEN IT ORDERED THE DEFENDANT TO BE TRIED IN FRONT OF THE JURY IN BELLY CHAINS AND SHACKLES.

{¶ 28} Fields argues in his third assignment of error that the trial court erred in ordering him to be shackled during the trial.

{¶ 29} Traditionally, a defendant remains unrestrained during his trial because the presence of restraints has a negative impact on the presumption of innocence. *State v.*

*Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304. However, a defendant may be shackled when there is danger of violence or escape. *State v. Blacker*, 12th Dist. Warren No. CA2008-07-094, 2009-Ohio-5519, citing *State v. Woodards*, 6 Ohio St.2d 14 (1966). The trial court is in the best position to consider the defendant's conduct both inside and outside the courtroom. *State v. Murphy*, 12th Dist. Butler No. CA2006-06-143, 2007-Ohio-4535. Therefore, the decision to impose shackles is left to the sound discretion of the trial court. *Woodards* at 23. However, the court must articulate on the record the reasons for imposing shackles. *State v. Wightman*, 12th Dist. Fayette No. CA2006-12-045, 2008-Ohio-95.

{¶ 30} Immediately before the trial began, the court held a hearing to determine courtroom safety protocol for Fields' trial. The trial court considered that Fields was serving a sentence for felonious assault, and had been convicted of numerous assault-related offenses. Four such convictions were based upon Fields assaulting guards, and others for harassing fellow inmates by spitting at them and throwing urine at them. The trial court also considered that days before the trial started, prison officials had to use force twice in one day and once the next day against Fields because he would not follow orders. Based upon Fields' aggressive behavior toward guards and other authority figures, as well as his violent tendencies toward others, the trial court ordered Fields to be shackled and chained during the trial in order to lessen the danger of violence in the courtroom.

{¶ 31} After ordering that Fields be restrained, the trial court stated that a skirt would be placed around the defense table so that the jury could not see the restraints. The trial court cautioned Fields to keep his hands under the table so that the shackles could not be seen. Fields then told the trial court that the skirt would not matter because he intended to take the stand in his own defense and that the jury would see the shackles and chains. The trial court told Fields that he would be placed on the stand out of the presence of the jury and that his restraints would be obscured from the jury's view by a railing that enclosed the

witness stand. Fields then indicated that he planned on using his hands during trial, such as when writing notes. The trial court again noted that if Fields chose not to raise his hands above the skirting, that the jury would not see the restraints because of the skirting and the railing. The trial court asked Fields if he was going to keep his hands down so that the jury could not see his chains and shackles. At that point, Fields stated, "it doesn't matter, you're already prejudiced against me and you're not going to give me a fair trial here." When the trial court assured Fields that he would receive a fair trial and posed the question again as to whether Fields was going to keep his hands below the skirting, Fields responded, "it doesn't matter so just make your decision." The trial court then stated that the skirting would not matter because of Fields' indication that he would not keep his hands covered.

{¶ 32} After reviewing the transcript, we find that the trial court did not abuse its discretion in ordering Fields to remain shackled during the trial given the danger of violence. The trial court properly considered Fields' violent history of assaulting others, and especially his violent behavior toward corrections officers and other guards. The trial court's decision to not employ skirting was also precipitated by Fields' own statements that he was not going to keep his hands hidden during the trial, and that the jury would see his restraints even with the skirting. The trial court properly considered the circumstances and decided to keep Fields restrained for the safety of the courtroom and to lessen the danger of violence. We find no abuse of discretion in the trial court's decision, and overrule Fields' third assignment of error.

{¶ 33} Assignment of Error No. 4:

{¶ 34} THE COURT COMMITTED ERROR BY NOT ALLOWING FAVORABLE, PROBATIVE EVIDENCE INTO THE TRIAL.

{¶ 35} Fields argues in his fourth assignment of error that the trial court erred by not permitting him to present evidence taken from Isome's personnel file regarding prior incidents involving use of force against other inmates.

**{¶ 36}** "It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court." *State v. Jones*, 12th Dist. Butler No. CA2012-04-077, 2013-Ohio-654, ¶ 54. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Isham*, 12th Dist. Butler No. CA2013-07-123, 2014-Ohio-1689.

**{¶ 37}** Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." According to Evid.R. 403(A), relevant evidence is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

**{¶ 38}** Fields argued at trial that incident reports relating to Isome's use of force against other inmates were relevant to prove that Isome had a violent history and that Isome, not Fields, was the initial aggressor. The trial court, however, found the reports as taken from Isome's personnel file to be inadmissible because such reports were not relevant. We find no abuse of discretion in the trial court's decision.

**{¶ 39}** This court has viewed the portions of Isome's personnel file proffered by Fields, and we agree with the trial court that the reports were not relevant. The reports detail several past incidents where Isome used force on inmates, including various methods to subdue combative inmates. However, in each instance, Isome's actions were deemed "justified," "appropriate," and no disciplinary action was ever taken against Isome for his use of force. While the reports may indicate that Isome was required to use force in execution of his job responsibilities, such reports do not substantiate Fields' assertion that Isome, himself, had a violent character or was prone to violence.

**{¶ 40}** Also, some of the reports were specific to instances where Isome was only one of many corrections officers who were involved in using force to subdue an inmate. Other

reports included Isome's use of different techniques to subdue the inmate than that used on Fields on the day in question. Therefore, these instances presented wholly different circumstances unrelated to the incident with Fields, and would not have aided the jury's understanding of what occurred between Fields and Isome.

{¶ 41} Moreover, Isome's past history of using force against other inmates does not have a bearing on what Fields believed Isome would do to him on the day of the incident. Fields argued that he acted in self-defense because Isome was the initial aggressor and he needed to take action to defend himself against Isome. Fields wanted to introduce the reports from Isome's personnel record to demonstrate that he had good reason to fear violence from Isome. However, Fields testified that he had never had any interactions with Isome before, and Isome testified that he had never had any exchanges with Fields before the day in question. Fields did not present any evidence that he was aware of Isome's past use of force, or that such use of force contributed to his decision to attack Isome that day in the cafeteria. Therefore, Isome's past use of force was irrelevant to Fields' state of mind when Fields was unaware of such use of force.

{¶ 42} After reviewing the proffered evidence and how it related to the issues, we find that the trial court did not abuse its discretion in finding portions of Isome's personnel file inadmissible. As such, Fields' fourth assignment of error is overruled.

{¶ 43} Assignment of Error No. 5:

{¶ 44} THE DEFENDANT-APPELLANTS [SIC] RIGHT TO A FAIR TRIAL WAS COMPROMISED BY CUMULATIVE ERROR.

{¶ 45} Fields argues in his fifth assignment of error that he was denied a fair trial by the cumulative effect of the errors he asserts above.

{¶ 46} "According to the cumulative error doctrine, 'a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a

fair trial even though each of the numerous instances of trial court error does not individually constitute a cause for reversal.'" *State v. McClurkin*, 12th Dist. Butler No. CA2007-03-071, 2010-Ohio-1938, ¶ 105, quoting *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). Because we have found that Fields' first four assignments of error are without merit, and that no error occurred, Fields was not deprived of a fair trial and the cumulative error doctrine is inapplicable here. *See State v. Morgan*, 12th Dist. Butler No. CA2013-08-146, 2014-Ohio-2472. As such, Fields' fifth assignment of error is likewise without merit, and is overruled.

{¶ 47} Assignment of Error No. 6:

{¶ 48} THE TRIAL COURT ERRED IN IMPOSING SEPARATE SENTENCES UPON THE DEFENDANT-APPELLANT WHEN THE CRIMES WERE COMMITTED WITH THE SAME ANIMUS.

{¶ 49} Fields argues in his final assignment of error that the trial court erred in not merging his convictions for assault on a corrections officer and obstructing official business.

{¶ 50} R.C. 2941.25 prohibits the imposition of multiple punishments for the same criminal conduct, and provides that:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 51} The Ohio Supreme Court has set forth a test to determine whether offenses are allied offenses of similar import pursuant to R.C. 2941.25. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Pursuant to the *Johnson* test, courts must first determine "whether it is possible to commit one offense *and* commit the other with the same conduct." *Id.* at ¶ 48.

(Emphasis sic.) It is not necessary that the commission of one offense will always result in the commission of the other, only that it is possible for both offenses to be committed by the same conduct. *Id.*

{¶ 52} If it is possible to commit both offenses with the same conduct, courts must next determine whether the offenses were in fact committed by the same conduct, or a single act performed with a single state of mind. *Id.* at ¶ 49. If the answer to both prongs of the test is yes, then the offenses are allied offenses of similar import and must be merged. *Id.* at ¶ 50. Conversely, if the offenses are committed separately or with a separate animus, the offenses will not merge. *Id.* at ¶ 51.

{¶ 53} An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

{¶ 54} Stated once more, Fields was convicted of assault in violation of R.C. 2903.13(A), which states, "no person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Fields was also convicted of obstructing official business in violation of R.C. 2921.31(A), which provides, that "no person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶ 55} While Fields disputes that he committed the crimes, he nonetheless asserts that even if he had, he would have done so with the same animus so that the convictions must be merged. We disagree.

{¶ 56} While it is possible that an inmate can commit obstructing official business and

assault with the same conduct, we find that Fields did not in this case. The record demonstrates that after Fields assaulted Isome by punching him on the face and engaging in a struggle that resulted in multiple physical injuries to Isome, Fields was ordered to stop his actions and submit to the control of the other corrections officers. Despite the clear orders from the other corrections officers, including Echcaroff, Fields continued to resist, an act separate from his assault on Isome. As stated during Echcaroff's testimony, it took approximately seven different corrections officers to finally subdue Fields after he had attacked Isome. Once the other corrections officers came into the cafeteria and tried to subdue Fields, he took his attention from assaulting Isome and directed it to resisting the other officers. Thus, Fields' act of disobeying the orders of the corrections officers by resisting them and not doing what they ordered him to do was separate conduct committed with a separate animus.

{¶ 57} Despite Fields' arguments that the obstruction was "simply a continuation" of the assault so that both crimes were committed within a single course of conduct, the record demonstrates otherwise. Fields had one animus and one victim when he committed assault against Isome by punching Isome in the face and causing him other injuries during the struggle. Fields had a separate animus and a separate "victim" when he blatantly, and without privilege to do so, resisted the corrections officers' attempts to restore peace in the cafeteria. Fields impeded the corrections officers in completing their official duties to subdue violent inmates by struggling with them and refusing to submit after he had already completed his assault against Isome. Thus, the two offenses were not committed with a single act and a single state of mind. See *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132 (affirming appellant's convictions for obstructing official business and assault where such convictions did not merge because they were committed with separate conduct

{¶ 58} Having found that Fields did not commit the crimes with a single animus, the trial court did not err by refusing to merge the convictions. As such, Fields' final assignment of error is overruled.

{¶ 59} Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.