The STATE of Ohio, Appellee,

v.

MEYER, Appellant.

[Cite as *State v. Meyer*, 189 Ohio App.3d 628, 2010-Ohio-4804.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2009–10–071.

Decided Oct. 4, 2010.

Donald W. White, Clermont County Prosecuting Attorney, and David H. Hoffmann, Assistant Prosecuting Attorney, for appellee.

Robinson & Brandt, P.S.C., and Jeffrey M. Brandt, for appellant.

Powell, Judge.

{¶ 1} Defendant-appellant, Christopher Meyer, appeals his conviction in the Clermont County Common Pleas Court for one count of theft. We affirm in part and reverse in part the decision of the trial court, and we remand for further proceedings.

{¶ 2} Meyer owned and operated two roofing companies, one based in Ohio, and the other based in Kentucky. As part of his normal course of business, Meyer frequently rented equipment from Sunbelt Rentals ("Sunbelt") and its predecessor, NationsRent. Depending on the job requirements, Meyer would rent equipment ranging from ladders and lifts to heavy gear such as Bobcat skid steers and loaders.

{¶ 3} According to Meyer's trial testimony, he considered his business relationship with Sunbelt and NationsRent to be "long-term" and "based mainly on trust and handshakes." Sunbelt often permitted Meyer's employees to rent equipment on his behalf, and Meyer would submit payment after returning the equipment. Meyer testified that he understood the rental period to include the time he rented the equipment until "the time it comes back" and further stated that he would return the equipment past the estimated rental period 93 percent of the time. According to Meyer, Sunbelt never expressed an unwillingness to permit his rental past the estimated return date, and keeping the equipment longer required "just a phone call and that's it, and sometimes not even that."

{¶ 4} On August 22, 2008, Meyer rented a Bobcat loader from the Sunbelt rental facility in Colerain, Ohio, for use at a jobsite in Kentucky. Although Meyer did not sign a contract or rental agreement at that time, Sunbelt agreed to deliver the equipment to Meyer's job site the following day. While the estimated return date on the paperwork was August 29, 2008, Meyer did not return the equipment on that date. However, Sunbelt did not inform Meyer that they wanted the Bobcat back and instead continued to invoice Meyer for the rental.

{¶ 5} On August 26, 2008, Meyer rented a second Bobcat loader from Sunbelt. Meyer signed the appropriate paperwork and made a $396.17 deposit. According to the rental contract, the return date for the second Bobcat was the day after Meyer rented it. As with the first Bobcat, Meyer did not return the second Bobcat by the estimated return date, and Sunbelt continued to charge him for the rental. Meyer also rented a chainsaw on August 26 for use at a jobsite in Kentucky but did not give an estimated return date. Meyer admitted at trial that the chainsaw was destroyed when his crew used it on a demolition project.

{¶ 6} On August 31, 2008, the first Bobcat Meyer rented was involved in an accident in Kentucky when a car hit one of the Bobcat's wheels and spun out of control. Police investigated the accident, prepared a report, and instructed

Meyer not to move the Bobcat. On September 23, 2008, the county called Meyer to inform him that the investigation was over, and Meyer contacted a Sunbelt employee to tell him that they were now authorized to move the Bobcat.

{¶ 7} Unaware of the accident, a Sunbelt manager called Meyer for details. Meyer and the manager began arguing over who was responsible for the damages to the Bobcat and the fact that Meyer failed to contact Sunbelt immediately after the accident occurred. After several unsuccessful attempts to rectify the situation, communication between Sunbelt and Meyer broke down. Eventually, Sunbelt picked up the Bobcats and assigned Meyer's unpaid rental account to a collection agency.

{¶ 8} Sunbelt later reported the incident to law enforcement, and Meyer was indicted on a single count of grand theft of property valued at more than $5,000 but less than $100,000. By the indictment and the bill of particulars, the state charged Meyer with purposely depriving Sunbelt of its property by exceeding the scope of Sunbelt's original consent at the time Meyer rented the equipment. The state specified that the theft offense occurred "on or about the 22nd through the 26th day of August, 2008." Meyer pleaded not guilty, and a jury heard the issue over a four-day trial.

{¶ 9} After the state called its first witness, Sunbelt's manager, the parties held a sidebar conference during which they discussed the impact the manager's testimony had on the state's theory of the case. The trial court told the prosecutor that it did not understand what direction the state was taking with the case and gave the state an opportunity to review its strategy during a recess. When the parties returned from the recess, the state expressed its confidence in its original theory, as stated in the indictment and bill of particulars, that Meyer committed theft by exceeding the scope of Sunbelt's consent when he did not return the rental equipment by the return date. The trial then continued, and the state and Meyer presented evidence specific to the information provided in the indictment and bill of particulars.

{¶ 10} During deliberations, the jury posed the following question to the trial court: "Are we deliberating that the defendant deprived the owner of property only on August 22nd through August 26th?" The trial court called the parties' counsel into the courtroom, and read the jury's question into the record. The state then moved to amend the indictment to expand the timeframe of the theft to include dates ranging from August 22 until October 1, 2008. Over Meyer's objection, the trial court granted the state's motion.

{¶ 11} The jury found Meyer guilty of theft of property valued at more than $500, but less than $5,000, and the trial court sentenced him to three years of community control and ordered restitution. During oral arguments before this court, the state conceded that by virtue of the jury's verdict, Meyer had been

found guilty of theft of the chainsaw alone. Because the jury found that the value of the property involved in the theft was more than $500 but less than $5,000, the state conceded that the jury could not have found Meyer guilty of stealing the Bobcats because their combined value greatly exceeded $5,000.[1]

{¶ 12} Meyer now appeals his conviction, raising the following assignments of error. For ease of discussion and because the second assignment of error is dispositive of this appeal, we will discuss the assignments out of order.

### Assignment of Error No. 2

{¶ 13} "Even if amendment were proper, the trial court abused its discretion in failing to discharge the jury and continue the matter, as Mr. Meyer had been misled and prejudiced."

{¶ 14} In his second assignment of error, Meyer argues that the trial court erred in not discharging the jury and ordering a continuance once the court permitted the state to amend Meyer's indictment. We find this argument meritorious.

{¶ 15} According to Crim.R. 7(D), "if any amendment is made to the substance of the indictment * * * the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial."

{¶ 16} The state charged Meyer with theft in violation of R.C. 2913.02(A)(2), which states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * Beyond the scope of the express or implied consent of the owner or person authorized to give consent." The state's theory of the case was that Meyer exceeded the scope of Sunbelt's consent by failing to return the equipment by the due dates listed in the rental agreements.

{¶ 17} According to the state's argument on appeal, Meyer was not misled or prejudiced by the trial court's permission to amend the date range for the offense. Conversely, Meyer moved the court to dismiss the jury and grant a

---

1. Although made moot by our decision, we also note that the trial court erred by ordering Meyer to pay $3,498.08 in restitution when Sunbelt had already accepted payment from Meyer for the destroyed chainsaw. According to Meyer's presentence-investigation report, Sunbelt expressed a willingness to accept $3,409.08 as a settlement for the unpaid rental charges. However, by virtue of the jury's verdict, restitution should have been limited to the cost of the chainsaw, an amount Meyer had already tendered.

continuance because he was misled and prejudiced by the amendment. Meyer argued that he relied on the dates submitted in the bill of particulars and indictment in building his defense and that because of the amendment, he was not able to offer a defense specific to the scope of Sunbelt's consent beyond August 22 through August 26. We agree with Meyer and find that the trial court should have dismissed the jury and continued the trial.

{¶ 18} According to the record, Meyer's defense was specifically crafted around the time frame offered in the indictment and bill of particulars. Meyer offered evidence in an attempt to prove that keeping the equipment past the estimated due dates did not exceed Sunbelt's consent. Meyer's counsel continually cross-examined state witnesses specific to the scope of Sunbelt's consent during the August 22 to August 26 time period, and Meyer testified in his defense specific to the original indictment dates.

{¶ 19} "[Defense counsel] Now, on August 26th when you went into—when you spoke with Sunbelt, did you feel you—were you under the impression that you were still authorized and had consent to use and operate the first Bobcat?

{¶ 20} "[Meyer] I do, and I think that—that it was—I had a ton of consent.

{¶ 21} "[Defense counsel] And Mr. Meyer, did you feel that you had authorization and consent to use and operate the second Bobcat on or about August 26, 2008?

{¶ 22} "[Meyer] Heck ya. [sic] Yes, sir."

{¶ 23} We decline to assume that Meyer presented his defense knowing that he should offer evidence regarding dates past those included in the indictment based on a possibility that an amendment to the indictment might occur.

{¶ 24} Additionally, and as admitted by the state, the chosen amended date of October 1, 2008, was completely arbitrary and was not a direct reflection of the evidence offered at trial. After the trial court agreed to grant the state's motion, the court asked the state to choose an amended date.

{¶ 25} "[Court] Pick a date. Pick a date. What are you going to pick?

{¶ 26} "[State] October 1st. I know that makes no sense, but like I said I don't have anything in front of me so—* * * I admit that it is an arbitrary date."

{¶ 27} The fact that the state chose an arbitrary date heightens our concern that Meyer was misled and prejudiced by the amendment. Without specifically choosing a date based on evidence presented to the jury, there is no way of knowing whether Meyer had been afforded the opportunity to offer a defense specific to Sunbelt's consent past the arbitrarily chosen date. Instead, the state requested an amendment only after the jury submitted a question during

deliberation concerning the time period it was permitted to consider in relation to the theft.

{¶ 28} Prompted by the jury's question, the state sought to amend the alleged dates of the offense. This retroactive amendment left Meyer unaware of the charges against him during trial and further misled him to the point that we cannot say that Meyer's rights were fully protected by proceeding with the trial.

{¶ 29} We also note that soon after the trial started, the trial court gave the state the opportunity to reconsider its strategy and ponder its approach during a recess. The state, satisfied with the information and charges within the indictment and bill of particulars, failed to request an amendment at that time. Throughout the remainder of the state's case-in-chief, as well as during his own defense, Meyer presented evidence in an effort to dispute the charges and establish that his actions did not exceed the scope of Sunbelt's consent within the time frame indicated in the indictment.

{¶ 30} In reliance upon the state's representation that it was satisfied with the original indictment, Meyer's defense was specific to the dates listed in the original indictment rather than the amended October 1, 2008 date. As a result, we find that it cannot clearly be shown that the state in this case did not mislead the defense.

{¶ 31} Under Crim.R. 7(D), appellant was entitled to a discharge of the jury and continuance as requested. Meyer's second assignment of error is sustained.

### Assignment of Error No. 3

{¶ 32} "The state's evidence was insufficient to demonstrate that Mr. Meyer committed an offense by October 1, 2008, as the state failed to prove the date of Sunbelt's withdrawal of consent occurred by that date."

{¶ 33} In his third assignment of error, Meyer argues that his conviction is not supported by sufficient evidence. This argument lacks merit.

{¶ 34} Although we have sustained Meyer's second assignment of error, we will address his sufficiency argument based on *State v. Meador*, 123 Ohio St.3d 450, 2009-Ohio-5861, 917 N.E.2d 273, in which the Ohio Supreme Court directed this court to address Meador's sufficiency argument even though we found that he was entitled to a new trial.

{¶ 35} When reviewing the sufficiency of evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson*, Warren App. No. CA2006–01–007, 2007-Ohio-2298, 2007 WL 1394631. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 36} According to the record, the return date listed on the rental contract for the chainsaw was August 27, 2008. Meyer testified that he did not return the chainsaw by that date and later admitted that the chainsaw had been destroyed by his work crew during a demolition project. When viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of theft in violation of R.C. 2913.02(A)(2) proven beyond a reasonable doubt.

{¶ 37} Meyer's third assignment of error is overruled.

### Assignment of Error No. 1

{¶ 38} "The trial court abused its discretion and violated Mr. Meyer's constitutional rights by amending the indictment after trial to extend the claimed dates of the offense and thereby alter the identity of the theft crime charged."

### Assignment of Error No. 4

{¶ 39} "The verdict was against the manifest weight of the evidence."

{¶ 40} Because we have found Meyer's second assignment of error dispositive of this appeal and have determined that reversal is warranted, Meyer's first and fourth assignments of error are moot.

{¶ 41} The judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

Judgment affirmed in part
and reversed in part,
and cause remanded.

BRESSLER, P.J., and RINGLAND, J., concur.