[Cite as *State v. Villani*, 2014-Ohio-4182.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2013-12-231 |
| | : | O P I N I O N |
| - vs - | | 9/22/2014 |
| | : | |
| RANDY RAY VILLANI, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-08-1299

Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Christopher P. Frederick, 304 North Second Street, Hamilton, Ohio 45011, for defendant-appellant

**PIPER, J.**

{¶ 1}  Defendant-appellant, Randy Villani, appeals his convictions and sentence in the Butler County Court of Common Pleas, for grand theft and two counts of operating a vehicle while under the influence (OVI).

{¶ 2}  During the evening hours of August 6, 2013, Patricia Williams parked her Grand Marquis in her driveway with the door unlocked and a spare key in the ashtray.  The next

morning, the car was gone. Williams reported her car stolen, and Deputy Jody Green of the Butler County Sheriff's Office took Williams' statement and advised other officers to be on the lookout for Williams' stolen car.

{¶ 3} Three days later, Sergeant Amy Mays of the Fairfield Police Department observed Williams' stolen car traveling northbound on State Route 4. Sergeant Mays had been patrolling the area, and had previously received information that the car was spotted in the area of State Route 4. Sergeant Mays followed the car and observed the driver weaving, and then saw the driver run a red light. Sergeant Mays performed a traffic stop, and approached the driver, who was later identified as Villani. Sergeant Mays observed that Villani had slurred speech, appeared disoriented, had the odor of an alcoholic beverage on his person, had bloodshot and glassy eyes, and that the front of his pants were wet. When asked about ownership of the car, Villani told Sergeant Mays that the car belonged to a friend. Villani later changed his story, and told Sergeant Mays that he found the car running at a bar, got into it, and drove away.

{¶ 4} Villani was arrested, and his blood alcohol content was tested. The results indicated that Villani's blood alcohol content was .154. Villani was indicted on one count of grand theft and two counts of OVI. Villani pled not guilty to the charges, and the matter proceeded to a two-day jury trial.

{¶ 5} During the trial, the state offered three witnesses, including Deputy Green, Officer Mays, and Williams. Deputy Green testified about responding to Williams' call and taking her stolen-vehicle report. Sergeant Mays testified to her encounter with Villani and her investigation that led to Villani's arrest. Williams testified to the damage done to her car, as well as items that were missing from the car.

{¶ 6} During Villani's defense, he asserted that he did not steal the car because he was staying at his mother's house at the time, and had not left her house on the night the car

was stolen. Villani called his mother as a witness, and she testified that Villani had stayed with her and had not left the house for any significant amount of time. She also stated that she drove Villani to the Serenity Hall halfway house on August 9, 2013. Villani also called Steven Price, who is a clinical operations supervisor at Serenity Hall. Price testified that Villani checked into the facility on August 8, 2013 and stayed there until he checked himself out of the facility in the evening hours of August 9, 2013.

{¶ 7} Villani asked the court to include a jury instruction on the lesser included offense of unauthorized use of a vehicle. The trial court granted Villani's request, and informed the parties that the jury instructions would include unauthorized use of a vehicle. The trial court also granted the state's request to include special findings within the jury instructions that would elevate the unauthorized use of a vehicle offense from a first-degree misdemeanor to a fifth-degree felony, specific to unauthorized use of an elderly person's vehicle, as Williams was 77 years old at the time her car was stolen.

{¶ 8} The jury found Villani guilty of the two OVI counts and of the grand theft charge. The trial court merged the two OVI counts, and sentenced Villani to 17 months on the grand theft charge and 180 days on the OVI charge. The trial court ordered the sentences to be served concurrently, for an aggregate sentence of 17 months. Villani now appeals his convictions and sentence, raising the following assignments of error. Because Villani's second and third assignments of error are interrelated, we will address them together. Also, for ease of discussion, we will address the assignments of error out of order.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT MR. VILLANI.

{¶ 11} Assignment of Error No. 3:

{¶ 12} MR. VILLANI'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT

- 3 -

OF THE EVIDENCE.

{¶ 13} Villani argues in his second and third assignments of error that his conviction for grand theft was against the manifest weight of the evidence and not supported by sufficient evidence. Villani, however, does not challenge his conviction for OVI so we will limit our discussion to the grand theft charge.

{¶ 14} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds.

{¶ 15} A manifest weight challenge examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *Wilson*, 2007-Ohio-2298.

> In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Cummings*, 12th Dist. Butler No. CA2006-09-224, 2007-Ohio-4970, ¶ 12.

{¶ 16} While appellate review includes the responsibility to consider the credibility of witnesses and the weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a

- 4 -

conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 17} Villani was charged with grand theft in violation of R.C. 2913.02(A)(1), which provides, "no person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent." According to R.C. 2913.01(C)(1), deprive means to "withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration."

{¶ 18} During the state's case-in-chief, it presented testimony from three witnesses regarding the charges against Villani. Sergeant Mays testified that during the early morning hours of August 7, 2013, police received a suspected drunk driver report in the area of State Route 4. Police ran the license plate given to them by the caller, but did not pursue the matter further until they received information that the car had been reported stolen. Sergeant Mays testified that she had been watching for the car near the State Route 4 area, and finally observed the stolen car during the early morning hours of August 10, 2013. Sergeant Mays testified that she observed the car weaving and also that the driver failed to stop at a red light. When Sergeant Mays pulled the car over, she encountered Villani.

{¶ 19} Sergeant Mays testified that Villani first told her that the car belonged to a friend of his, then later stated that the car was left running at a bar and that he got into it and drove away. The state played a video recorded by Sergeant Mays' cruiser camera in which Villani can be seen and heard admitting that he took the car from the bar and that he got in it and drove away. On cross-examination, Sergeant Mays indicated that there were no indications of forced entry present on the outside of the car, but that stolen cars do not always bear

signs of forced entry.

{¶ 20} The state next presented the testimony of Deputy Jody Green, who took the report of William's stolen vehicle. Deputy Green testified that he interviewed Williams, and entered the car's information into a police computer system to alert other officers to look for the car.

{¶ 21} Williams also testified during the state's case-in-chief and recalled that while she normally parked her car in her garage, she was unable to do so on the night it was stolen because there were items being stored in the garage. Williams testified that she retrieved clothes from the car later that night, and that she had neglected to lock the car doors after removing the clothes from the car. Williams also stated that she keeps a key in the ashtray of the car in case she or her daughters need to use the car on an emergency basis.

{¶ 22} Williams testified that police eventually informed her that her car had been recovered, and that there was extensive damage to both the interior and exterior of the car. Williams also testified that several personal items were missing from the car such as jumper cables, hats, and a blanket. Williams testified that the car was so damaged that the insurance company deemed the car totaled, and reimbursed her for her loss. Williams testified that she never gave Villani permission to drive her car.

{¶ 23} Villani argues that the evidence was insufficient to demonstrate that he committed grand theft because he presented two witnesses who testified that Villani's whereabouts were accounted for from August 8, 2013 until August 9, 2013. Villani also argues that the state failed to prove that he had the intent to permanently deprive Williams of her property.

{¶ 24} Steven Price testified that he is the clinical operations supervisor at the Serenity Hall halfway house, and that Villani arrived at Serenity Hall on August 8, 2013 at approximately 11:25 a.m. Price also testified that Villani did not leave Serenity Hall until

August 9, 2013 at 7:54 p.m. Price testified on cross-examination that Serenity Hall is not a lock-down facility, and that the people who are there are not monitored "every minute of every day." Villani next called his mother, who testified that Villani was staying with her around the time the car was stolen, and that she took Villani to Serenity Hall on August 8, 2013. Villani's mother also testified that Villani was not gone from the house for any significant amount of time, but also testified that her home is less than a mile away from Williams' residence where the car was stolen.

{¶ 25} We reject Villani's argument that his convictions are against the manifest weight of the evidence and not supported by sufficient evidence. Despite Villani's argument that he did not have the intent to deprive Williams of her property, Villani admitted during the cruiser camera video that he got into the car and drove it away and never argued that he had Williams' permission to drive the vehicle. Nor did Villani assert that when he got into the car at the bar and drove away, he did so with the intent to return the car to its rightful owner. We do not find that the jury clearly lost its way or created a manifest miscarriage of justice. The jury heard all of the testimony, considered the evidence, and found the state's theory of the case and its witnesses credible and we will not disturb such a finding on appeal.

{¶ 26} Having found that Villani's convictions were supported by sufficient evidence and were not rendered against the manifest weight of the evidence, we overrule Villani's second and third assignments of error.

{¶ 27} Assignment of Error No. 1:

{¶ 28} THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL BY ADMITTING EVIDENCE OF ELEMENTS NOT PRESENTED TO THE GRAND JURY.

{¶ 29} Villani argues in his first assignment of error that the trial court erred by allowing Williams to testify about her age and the damage done to her car.

{¶ 30} During its case-in-chief, the state called Williams to testify about her car being stolen. During direct examination, the state asked Williams how old she was, and over defense counsel's objection, Williams answered that she was 77 years old. Villani also objected to Williams' testimony about how damaged her car was and what items had been taken from the inside of the car. On both occasions, Villani objected to the line of questioning, arguing that such facts were not relevant to the charges, and had not been included in the indictment specific to the grand theft charge. Villani now asserts on appeal that the trial court's admission of Williams' testimony was a violation of his due process rights. We disagree.

{¶ 31} Section 10, Article I of the Ohio Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury* * *." The Ohio Supreme Court has recognized that "this provision guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury." *State v. Evans*, 122 Ohio St.3d 381, 383, 2009-Ohio-2974, ¶ 7, quoting *State v. Headley*, 6 Ohio St.3d 475, 478 (1983).

{¶ 32} Even so, R.C. 2945.74 provides that a defendant "may be found guilty of a lesser included offense even though the lesser offense was not separately charged in the indictment." *Evans* at ¶ 8. "Lesser included offenses need not be separately charged in an indictment, because when an indictment charges a greater offense, it 'necessarily and simultaneously charges the defendant with lesser included offenses as well.'" *Id.*, quoting *State v. Smith*, 121 Ohio St.3d 409, 2009-Ohio-787, ¶ 14. As such, if the offense is a lesser included offense of the charged offense, notice is presumed. *State v. Scott*, 12th Dist. Butler No. CA2008-06-149, 2009-Ohio-1450, ¶ 7. "Thus, a conviction for a lesser included offense does not deprive an offender of his constitutional right to presentment or indictment by the grand jury, because by indicting the offender for the greater offense, the jury has necessarily

considered each of the essential elements of the lesser offense." *Evans*, 2009-Ohio-2974 at ¶ 8. Moreover, a lesser included instruction also necessarily includes "any of the special, statutory findings dictated by the evidence produced in the case." *Smith*, 2009-Ohio-787 at ¶ 15.

{¶ 33} The record indicates that Villani was indicted for grand theft and that the jury was given an instruction on unauthorized use of a vehicle, a violation of R.C. 2913.03(A), as a lesser included offense of grand theft. This court and others have recognized that unauthorized use of a vehicle is a lesser included offense of grand theft, and Villani recognizes as much. *State v. Jackson*, 12th Dist. Butler No. CA2013-10-192, 2014-Ohio-3779; *State v. Vrazalica*, 8th Dist. Cuyahoga No. 84412, 2005-Ohio-1164.

{¶ 34} R.C. 2913.03(A) provides, "no person shall knowingly use or operate an aircraft, motor vehicle, motorcycle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent." According to R.C. 2913.03(D)(4), unauthorized use of a motor vehicle is a felony of the fifth degree if the victim of the offense is an elderly person. R.C. 2913.03(D)(4)(a)-(d) also provides that the degree of unauthorized use of a vehicle will change depending on the amount of damage done to the vehicle because of the unauthorized use.

{¶ 35} While the jury found Villani guilty of the grand theft charge, rather than the lesser included offense of unauthorized use of a vehicle, the trial court properly admitted evidence that went to the elements of unauthorized use of a vehicle and its aggravating factors specific to Williams being an elderly victim or the amount of damage done to her car.

{¶ 36} Although Villani argues that Williams' age and damage to the car were facts not included in the indictment, Villani was placed on notice that the state would be offering evidence as to the lesser included charge of unauthorized use of a vehicle, a charge that Villani himself asked to be included in the jury instructions. The indicted charge of grand

theft necessarily included all of the elements of unauthorized use of a vehicle, and the evidence produced at trial was specific to the special statutory findings used to determine the criminal culpability Villani would have had if the jury had found him guilty of unauthorized use of a vehicle.

{¶ 37} The trial court properly admitted the evidence regarding unauthorized use of a vehicle, and none of Villani's rights were violated by the admission of evidence of Williams' age or the damage to her car. As such, Villani's first assignment of error is overruled.

{¶ 38} Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.