[Cite as *State v. Walsh*, 2015-Ohio-5506.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                                :

    Plaintiff-Appellee,                   :          CASE NO.   CA2015-04-033

    - vs -                                        :          O P I N I O N
                                                            12/30/2015

                                                  :

SCOTT J. WALSH,                              :

    Defendant-Appellant.                  :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14 CR 30287


David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Fred S. Miller, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, for defendant-appellant


**PIPER, P.J.**

{¶ 1} Defendant-appellant, Scott Walsh, appeals his convictions in the Warren County Court of Common Pleas for vehicular assault, willful and wanton operation of a motor vehicle, and child endangerment.

{¶ 2} Walsh, who had recently picked up his seven-year-old son for a weekend visitation, was driving in the left lane of I-71 south in his silver SUV when he became involved

in a road rage incident involving a white SUV driven by Robert Stein. The traffic on the two-lane highway was heavy, with cars and trucks filling the left and right lanes of I-71 south. Both men engaged in "brake-checking" the other and switched positions several times in order to antagonize the other driver.

{¶ 3} After several instances of brake-checking, Stein approached the rear of Walsh's SUV, and then passed Walsh on the left by driving on the emergency berm. Walsh maneuvered his SUV in such a way as to prevent Stein from reentering the highway from the emergency lane. When Stein tried again to reenter the left lane of the highway, Walsh's SUV came in contact with Stein, causing Stein's SUV to skid across the left and right lanes of the highway where it "t-boned" a Mini Cooper. The Mini Cooper careened down a culvert, crashed through a sign, and rolled before it stopped at the bottom of the culvert. Stein's SUV slid down the culvert and landed next to the Mini Cooper. The passengers in the Mini Cooper were injured, but all survived the collision.

{¶ 4} A truck driver who had witnessed the incident followed Walsh and motioned for him to exit the highway, which Walsh eventually did. The truck driver demanded Walsh's driver's license, which Walsh gave him. While the truck driver backtracked to help the occupants in the Mini Cooper, Walsh waited on the side of the highway until a state trooper arrived. Walsh gave statements and spoke to investigating troopers about the road rage incident.

{¶ 5} Walsh was charged with vehicular assault, willful or wanton operation on the street or highway, and endangering children. Walsh pled not guilty to the charges, and the matter proceeded to a two-day jury trial. During the trial, the state presented testimony from several witnesses who observed the moments leading up to the crash and the troopers who investigated the incident. Walsh testified in his own defense, and also presented testimony from an expert. The jury found Walsh guilty on each count. The trial court sentenced Walsh

to time already served, community control, and a two-year driver's license suspension. Walsh now appeals his convictions, raising the following assignment of error.

{¶ 6} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT CONVICTED HIM OF VEHICULAR ASSAULT, WILLFUL AND WANTON OPERATION, AND CHILD ENDANGERMENT.

{¶ 7} Walsh argues in his assignment of error that his convictions are not supported by sufficient evidence.

{¶ 8} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Crockett*, 12th Dist. Fayette No. CA2014-08-018, 2015-Ohio-1765, ¶ 18.

{¶ 9} Walsh was convicted of vehicular assault in violation of R.C. 2903.08(A)(2)(b), which provides that no "person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person * * * recklessly."[1] Walsh was also convicted of endangering children in violation of R.C. 2919.22(A), which provides, "No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or

---

1. Walsh argues, "in order to be convicted of vehicular assault, there must be at least one underlying driving infraction--and usually more than one—in order for a case to cross the line from simple negligence to criminal vehicular assault." However, the vehicular assault statute offers multiple ways that the offense may occur, several of which include specific instances of traffic infractions such as driving while impaired or speeding in a construction zone. However, the section utilized by the state when charging Walsh with vehicular assault only requires that the accused cause serious physical harm while driving recklessly, and does not require any predicate traffic violation.

support."[2] Lastly, Walsh was convicted of willful or wanton disregard of safety on highways in violation of R.C. 4511.20(A), which provides, "No person shall operate a vehicle, trackless trolley, or streetcar on any street or highway in willful or wanton disregard of the safety of persons or property."

{¶ 10} The mental state applicable to Walsh's convictions is recklessness, which is defined by R.C. 2901.22(C) as occurring when,

> with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 11} Despite his argument that the state failed to offer sufficient evidence to support his convictions, the record indicates that each of Walsh's convictions was supported by sufficient evidence. During the trial, the state presented testimony from several witnesses, including the truck driver who saw the incident developing and the actual crash. The truck driver testified that he is familiar with I-71 and that he travels the highway often. On the evening of the incident, the truck driver witnessed Walsh "tailgating" Stein and Stein brake-checking Walsh. The truck driver testified that Walsh was "extremely" close to Stein's vehicle and that Stein brake-checked Walsh three or four times. At that point Walsh "swerved hard to the - - to the right, punched the - - punched the gas. * * * swerved violently to the left to cut off [Stein]" and then proceeded to brake-check Stein. The truck driver testified that the back and forth incidents of tailgating and brake-checking continued for a few miles, and that Stein eventually tried to pass Walsh on the emergency berm.

{¶ 12} The truck driver testified that Walsh was not "going to allow" Stein to pass him

---

2. Walsh does not deny that his child was in the vehicle with him during the evening in question.

on the left, and that he watched Walsh "jerk" his car to the left and "push the white SUV off the road." Once Stein's car was trapped on the emergency berm, Walsh "pretty much held him there for a little bit" and further blocked Stein from reentering the highway. The truck driver also testified that Walsh started to jerk his wheel toward Stein's SUV, and that at some point, there was a "violent" movement that he believed caused Walsh's vehicle to hit Stein's. The truck driver testified that Stein's SUV spun, went across both lanes, and t-boned the Mini Cooper driving in the right lane.

{¶ 13} The truck driver testified that after the Mini Cooper crashed through the sign and rolled down the culvert, he watched Walsh stop his vehicle on the emergency berm, but then drive away soon after stopping. The truck driver began to follow Walsh, and honked his horn to signal Walsh to stop. Once Walsh stopped, the truck driver trapped Walsh with his semi-truck because Walsh was trying to drive around the semi-truck to get back onto the highway. The truck driver testified that he got out of his truck and demanded that Walsh provide his driver's license, which Walsh agreed to do. When asked why he demanded Walsh's license, the truck driver testified that based on what he had witnessed, Walsh "needed to answer for what he did."

{¶ 14} The state also presented the testimony of an occupant of the car driving behind the Mini Cooper at the time of the accident. The occupant testified that he witnessed the SUVs brake-checking each other and that "they were both displaying like road rage." The occupant described the instances of tailgating and brake-checking in much the same manner as the truck driver, and also described how Walsh jerked his SUV toward Stein when Stein attempted to pass Walsh on the left in the emergency berm lane.

{¶ 15} The state then presented testimony from a man who witnessed the incident as a passenger in a pickup truck, which was driving near the two SUVs. The passenger testified that he watched as the SUVs tailgated and brake-checked each other, and then witnessed

Stein attempt to pass Walsh on the left. The passenger testified that Walsh made a "hard jerk" toward Stein's SUV in order to keep Stein from passing, and that as a result, Stein's SUV lost control and t-boned the Mini Cooper. When asked whether the hard jerk resulted in contact between Walsh and Stein's vehicles, the passenger testified, "I believe that it did."

{¶ 16} The passenger also testified that watching Walsh jerk his SUV toward Stein reminded him of watching the television show "Cops" and seeing police officers perform a "PIT maneuver." When asked to explain further, the passenger testified that the maneuver to which he referred is one used by police to "incapacitate" a vehicle. The passenger also confirmed that because he was not driving, he was able to give his "undivided attention" to the event as it unfolded.

{¶ 17} The state also presented the testimony of Trooper Christian Perrin, who responded to the crash site. Trooper Perrin testified that he took photographs of the crash site, and that one such photograph showed a small dent in Walsh's SUV and that there were rubbings and abrasions on the outside of Walsh's tire that resulted from contact with Stein's SUV. Trooper Perrin testified that he had investigated several hundred accidents, and that based on his training and experience, he believed the dent and abrasions on Walsh's vehicle occurred because of the contact and were not there previous to the day in question.

{¶ 18} Trooper Kevin Morgan of the Ohio State Highway Patrol, who took part in investigating the crash, also testified for the state. Trooper Morgan testified that when he questioned Walsh, Walsh confirmed that his vehicle made contact with Stein's SUV, but that Walsh did not remember where. Trooper Morgan also testified that when he asked Walsh how he could have avoided contact with Stein, Walsh replied, "slow down." However, Walsh did not deny to Trooper Morgan that his SUV made contact with Stein.

{¶ 19} The state also presented the testimony of some of the occupants from the Mini Cooper. One passenger testified that as a result of the accident, he sustained physical

- 6 -

damage to his eyes, neck, hand, and leg, and that he had to obtain physical therapy to help in his recovery. The passenger testified that he witnessed the contact between Walsh's SUV and Stein's, and that he saw that Walsh's SUV "clipped" Stein's SUV before Stein's SUV crashed into the Mini Cooper in which he was riding.

{¶ 20} Another passenger testified that as a result of the accident, she had cuts on her arm, face, head, and shin, and that after the accident, she suffered from headaches and migraines. The driver of the Mini Cooper also testified, and stated that she sustained cuts and that she had to visit a neuropsychologist after the accident because certain noises were overwhelming to her. Another passenger from the Mini Cooper also testified that she suffered a broken heel and soft tissue damage to her chest resulting in a mass and extensive and long-lasting pain. She also had cuts on her legs, glass that is still embedded in her legs, and bruising and scarring on her legs and arms. As a result of her injuries, the passenger had to live with her son who provided care.

{¶ 21} After viewing this evidence in a light most favorable to the prosecution, we find that the jury could have found the essential elements of each crime proven beyond a reasonable doubt. While Walsh essentially argues that the state failed to prove that he acted with a reckless mental state as to each crime charged and that his expert witness established that the crash was not his fault, the state's evidence demonstrates that Walsh participated in the aggressive driving, thus demonstrating a heedless indifference to the consequences. By engaging in the pattern of tailgating and brake-checking, added to Walsh's efforts to prevent Stein's vehicle from reentering the highway once Stein passed on the left, Walsh disregarded the substantial and unjustifiable risk that his conduct was likely to cause a crash with either Stein or the many vehicles traveling around himself and Stein that evening.

{¶ 22} The fact that Walsh presented the testimony of an expert did not negate the other testimony presented at the trial from the state's witnesses regarding the interaction

between Walsh and Stein leading up to the crash. Specifically, the expert's conclusion that Stein's aggressive driving was the "contributory factor in the cause of this crash," did not negate Walsh's own culpability for his own aggression and his making contact with Stein's vehicle in the seconds before Stein skid across the highway and into the Mini Cooper. In fact, the expert did not deny that Walsh's vehicle made contact with Stein's vehicle, he only opined that the contact did not directly cause Stein to skid across the highway. However, on cross-examination, the expert agreed that the contact from Walsh's SUV could have caused Stein to overcorrect his vehicle, thus causing Stein's SUV to careen into the Mini Cooper. The expert also agreed that Walsh exhibited signs of aggressive driving, but concluded that Stein was the "main aggressor" because he tried to pass Walsh on the left. However, the law does not require that the accused be the main aggressor in a road rage incident, only that the accused acted recklessly when committing the offenses discussed above.[3]

{¶ 23} After reviewing the record, we find that Walsh's convictions are supported by sufficient evidence. Walsh's single assignment of error is therefore overruled.

{¶ 24} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.

---

3. The sentencing transcript indicates that Stein was also charged as a result of the incident and pled guilty to his charges.